**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                                             **CASE NO.: 8:11-CR-00014-T-33AEP**

**SCOTT ALLAN BENNETT,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

THIS MATTER comes before the Court on the Defendant's Motion to Suppress by Defendant Scott Allan Bennet (the "Motion to Suppress," Dkt. No. 23), filed March 8, 2011. The Defendant requests that all evidence obtained by the MacDill United States Air Force Base ("MAFB") Security Forces, the Tampa Police Department (the "TPD"), and Detective Edward Garcia ("Detective Garcia") on April 23, 2010 be suppressed. The United States of America (the "Government") filed its Response in Opposition to Defendant's Motion to Suppress and Memorandum of Law (Dkt. No. 25) on March 22, 2011. The parties appeared before the Court for a hearing on theses issues on April 12, 2011.

## I. **Background**[1]

On April 23, 2010, at approximately 2:15 A.M., the Defendant approached the Dale Mabry Main Gate of MAFB (the "Dale Mabry Gate"). (Dkt. No. 23 at 2.) Upon arriving at the Dale Mabry Gate, Technical Sergeant Verbon Shell ("TSgt. Shell") selected the Defendant for random Base Entry Point Check ("BEPC") Screening. (Dkt. No. 25 at 2.) Mr. Shell referred the Defendant to Technical Sergeant Garry M. Ortiz ("TSgt. Ortiz"), who asked the Defendant for consent to search his vehicle, to which the Defendant agreed. (Dkt. No. 23 at 2.) Upon searching the vehicle, TSgt. Ortiz discovered weapons and an empty gun holster. (Dkt. No. 25 at 2-3.) TSgt. Ortiz also asked the Defendant to produce his identification, to which the Defendant responded that he was unable to comply despite the fact that the identification was "hanging around his neck." (Dkt. No. 25 at 3.) TSgt. Ortiz, having determined that the Defendant appeared to be drunk, consulted with his supervisor, Technical Sergeant Jerrod Klein ("TSgt. Klein"), who agreed that TPD needed to be called regarding a potential Driving Under the Influence ("DUI") offense. (Dkt. No. 25 at 3.) For approximately forty-five (45) minutes, the MAFB Security Forces continued to question the Defendant while they waited for TPD to arrive. (Dkt. No. 25 at 3.) TPD Officer Joseph Sustek ("Officer Sustek") arrived around 3:00 A.M., conducted a field sobriety test, and placed the Defendant under arrest. (Dkt. No. 25 at 3.) Officer Sustek then

---

[1] On April 15, 2011, the Government filed a Stipulation to the Facts Concerning the Defendant's Motion to Suppress, noting that "counsel to both parties mutually agree that the facts as they are set forth in the defendant's Motion to Suppress (Dkt. No. 23) and the Government's Response in Opposition (Dkt. No. 25) are stipulated to by the parties for the purposes of resolving the Motion to Suppress." (Dkt. No. 29.)

proceeded to search the Defendant and his vehicle, finding a concealed handgun on the Defendant's person, and several other weapons in the Defendant's vehicle. (Dkt. No. 25 at 3.)

At approximately 10:00 A.M. on April 23, 2010, Detective Garcia was informed of the events regarding the Defendant that occurred in the early morning hours. (Dkt. No. 25 at 3.) Detective Garcia learned that the Defendant lived on MAFB, and consulted with employees of the Housing Office at MAFB, who told him that the Defendant had received authorization to live on MAFB as an Army Reservist on active duty orders from the U.S. Central Command ("CENTCOM"). (Dkt. No. 25 at 3-4.) After further research, Detective Garcia concluded that the Defendant was in fact a civilian contractor for CENTCOM, and was not on active duty. (Dkt. No. 25 at 4.)

At approximately 1:45 P.M. on April 23, 2010, the Defendant returned to the Dale Mabry Gate of MAFB. (Dkt. No. 25 at 4.) Detective Garcia asked the Defendant for permission to search his car, to which the Defendant agreed. (Dkt. No. 25 at 4.) During the search, Detective Garcia found four empty gun holsters, a canister of pepper spray, and a knife. (Dkt. No. 25 at 4.) Detective Garcia then asked the Defendant for permission to search his residence, to which the Defendant declined. (Dkt. No. 25 at 4.) Detective Garcia then contacted the Chief of Military Justice on MAFB to brief her as to whether there was probable cause to seek a warrant for a search of the Defendant's residence. (Dkt. No. 25 at 4.) The Chief of Military Justice concurred that there was probable cause, and Detective Garcia contacted a Military Magistrate, who verbally authorized the search of the Defendant's residence for evidence related to the possession of unregistered firearms and dangerous weapons. (Dkt. No. 25 at 4.) The authorization was

3

documented in a signed warrant, which was accompanied by an affidavit that reflected the information that was earlier conveyed to the Military Magistrate. (Dkt. No. 25 at 4.)

At approximately 6:00 P.M. on April 23, 2010, the search warrant was executed at the Defendant's residence, resulting in the seizure of seven firearms, over 9,000 rounds of ammunition, and other contraband weapons. (Dkt. No. 25 at 3.)

## II. **Discussion**

In his Motion to Suppress, the Defendant presents two chief arguments:

(1) The MAFB Security Forces's forty-five (45) minute detainment of the Defendant at the Dale Mabry Gate was unlawful, and therefore all evidence subsequently recovered should be suppressed; and

(2) There was no probable cause to search the Defendant's residence, and therefore, all evidence recovered should be suppressed.

### A.     **The MAFB Security Forces's Detainment**

The Defendant first argues that the MAFB Security Forces had "no jurisdiction for the 45 minute detention/arrest of Mr. Bennett ...." (Dkt. No. 23 at 4.) The Defendant notes that while the interior of MAFB sits on land retaining exclusive federal jurisdiction, the Dale Mabry Gate only retained proprietary jurisdiction. (Dkt. No. 23 at 5-8.) For federal lands with exclusive jurisdiction, the federal government has the "sole authority to legislate," and thus federal criminal law applies to the exclusion of state criminal law. (Dkt. No. 23 at 8-9.) Proprietary jurisdiction, on the other hand, involves situations where the United States acquires property "without accepting any special criminal jurisdiction over it," such as if the United States were leasing land

from a private owner. (Dkt. No. 23 at 7-9.) As such, within the Dale Mabry Gate, which sat on land possessing proprietary jurisdiction, the MAFB Security Forces retained no "special criminal jurisdiction" over the Defendant as a civilian. (Dkt. No. 23 at 7-10.) For that reason, the Defendant argues that the MAFB Security Forces's forty-five (45) minute detainment was unlawful since it was in furtherance of the TPD's enforcement of the DUI laws of the State of Florida, which they had no right to enforce. (Dkt. No. 23 at 10.)

Intertwined with the Defendant's jurisdictional argument is his argument that the MAFB Security Forces's forty-five (45) minute detainment was a violation of the Posse Comitatus Act. The Posse Comitatus Act states generally that "[w]hoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned not more than two years, or both." 18 U.S.C. § 1385 (1994). A violation of the Posse Comitatus Act occurs when "military participation ... pervade[s] the activities of civilian officials and ... subject[s] the citizenry to the regulatory exercise of military power." *United States v. Bacon*, 851 F.2d 1312, 1313 (11th Cir. 1988); *see also United States v. Hartley*, 678 F.2d 961, 978 (11th Cir. 1982) (holding that "military permeation of civilian law enforcement" is required to find a violation of Posse Comitatus). Thus, the relevant inquiry for the Court is whether the actions of the MAFB Security Forces, specifically their detaining of the Defendant for approximately forty-five (45) minutes within the Dale Mabry Gate, exceeded their proprietary jurisdiction and/or violated the Posse Comitatus Act.

5

In determining whether a military official's actions "pervaded" or "permeated" the activities of civilian officials in violation of the Posse Comitatus Act, courts have looked to the extent of the military's involvement in regulating or policing civilian activity. *See generally United States v. McArthur*, 419 F.Supp. 186, 194 (D.C.N.D. 1975) (noting that "the feared use which is prohibited by the posse comitatus statute is that which is regulatory, proscriptive or compulsory in nature, and causes the citizens to be presently or prospectively subject to regulations, proscriptions, or compulsions imposed by military authority."). In *United States v. Bacon*, the Eleventh Circuit held that there was no violation of the Posse Comitatus Act where military personnel assisted state and local law enforcement efforts in investigating cocaine distribution. *United States v. Bacon*, 851 F.2d 1312, 1313 (11th Cir. 1988). In *Bacon*, even though the military used its own funds for undercover drug "buys" and aided state and local investigators in gathering evidence for potential prosecutions, the Eleventh Circuit held that "assistance by the military in civil investigations ... is not a violation of the Posse Comitatus Act in that the military participation ... did not pervade the activities of civilian officials, and did not subject the citizenry to the regulatory exercise of military power." *United States v. Bacon*, 851 F.2d 1312, 1313 (11th Cir. 1988).

Courts have also found exception to potential violations of the Posse Comitatus Act where military personnel acted with an "independent military purpose." *See, e.g., United States v. Chon*, 210 F.3d 990, 994 (9th Cir. 2000); *see also, e.g., Applewhite v. United States Air Force*, 995 F.2d 997, 1001 (10th Cir.1993) ( "Since there was an independent military purpose of OSI's conduct, there was necessarily no willful use of any part of the Air Force as a posse to execute civilian

laws.") In determining whether military actions are taken with an "independent military purpose," courts look to military guidelines, such as the Uniform Code of Military Justice or Department of Defense Directives, as a point of comparison to the activity in question. *See United States v. Holloway*, No. 3:10CR-74-JHM, 2011 WL 304580 at *2 (W.D. Ky. Jan. 27, 2011) ("The investigation and enforcement of the Uniform Code of Military Justice (UCMJ) is considered an independent military purpose under the DoD Directive."). For example, in *United States v. Chon*, the Ninth Circuit held that the Naval Criminal Investigative Service's investigation of stolen property, conducted alongside the FBI and the Honolulu Police Department, was not a violation of the Posse Comitatus Act since the investigation was undertaken for the independent military purpose of protecting and recovering military equipment pursuant to DoD Directive 5525.5(A)(2)(a)(5). *United States v. Chon*, 210 F.3d 990, 994 (9th Cir. 2000). The Ninth Circuit has also found that ensuring the safety of the military base and public at large is a sufficient military purpose to avoid a potential violation of the Posse Comitatus Act. In *Kenny v. Easley*, the Plaintiff claimed that military personnel violated the Posse Comitatus Act by detaining him for driving under the influence pending the arrival of the California Highway Patrol. *Kenny v. Easley*, 166 Fed.Appx. 898, 900-901 (9th Cir. 2006). The Ninth Circuit nevertheless held that the military personnel in question did not violate the Posse Comitatus Act, finding that:

> The undisputed facts demonstrate that a military purpose prompted Kenny's detention. By preventing Kenny from driving under the influence, Defendants acted in their capacity as federal officers to ensure the safety of the [Naval Base Ventura County] and the public at large. Despite the incidental benefit to the [California Highway Patrol], Defendants primary purpose was to ensure the

>   security of [the Naval Base Ventura County]. Therefore, Defendants did not
>   violate the [Posse Comitatus Act].

*Kenny v. Easley*, 166 Fed.Appx. 898, 900-901 (9th Cir. 2006).

The instant case is analogous to both *Bacon* and *Kenny* in that the military action in question was not so pervasive as to rise to the level of violating the Posse Comitatus Act, and nevertheless satisfied an independent military purpose. In terms of the pervasiveness of the military personnel's actions, the MAFB Security Forces detainment of the Defendant was not an unlawful exercise of state law enforcement authority as the Defendant argues. Instead, MAFB Security Forces merely held the Defendant while TPD could arrive and proceed with their own independent investigation in furtherance of the DUI laws of the State of Florida. The Eleventh Circuit has plainly held that limited military participation in civilian law enforcement efforts, as was the case here, is not a violation of the Posse Comitatus Act. *United States v. Bacon*, 851 F.2d 1312, 1313 (11th Cir. 1988). Further, the actions taken by MAFB Security Forces did not rise to the level of "caus[ing] the citizens to be presently or prospectively subject to regulations, proscriptions, or compulsions imposed by military authority." *United States v. McArthur*, 419 F.Supp. 186, 194 (D.C.N.D. 1975).

The forty-five (45) minute detainment of the Defendant also falls within the "independent military purpose" exception to the Posse Comitatus Act. The Supreme Court has recognized as paramount the authority of a Base Commander to protect the security of his installation. *Cafeteria & Rest. Workers Union, Local 473, AFL-CIO v. McElroy*, 367 U.S. 886, 893 (1961) ("The power of a military commandant over a reservation is necessarily extensive and practically exclusive, forbidding entrance and controlling residence as the public interest may demand.")

8

(quotation omitted). Further, the Department of Defense has directed that it is not a violation of Posse Comitatus to act "for the primary purpose of furthering a military ... function of the United States, regardless of incidental benefits to civilian authorities," where such actions include those that are "related to the commander's inherent authority to maintain law and order on a military installation or facility," as well as actions taken to protect "DoD personnel, DoD equipment, and official guests of the Department of Defense." Dep't of Def. (DoD) Directive 5525.5, Enclosure 4, § E4.1.2.1; (Dkt. No. 25, Ex. 6). Here, the reasonable detainment of a suspected drunk driver satisfies those independent military purposes. The Defendant argues that "[w]hile the U.S. may argue that the MacDill AFB SF's were within their rights to perform certain actions pursuant to ensuring base security, it is clear from the officers' logs that the grand majority of the actions were based on a suspicion of the state of Florida crime of DUI." (Dkt. No. 23 at 12.) While the Defendant is correct in arguing that the MAFB Security Forces's actions were indeed based on their suspicion that the Defendant was driving drunk, and therefore was in violation of the DUI laws of the State of Florida, the Defendant does not indicate how taking such actions did not further their military purpose of ensuring base security, which the Defendant admits in his Motion to Suppress that the MAFB Security Forces were "within their rights to perform ...." (Dkt. No. 23 at 12.) Specifically, had the MAFB Security Forces simply released the Defendant, as the Defendant argues they should have done (Dkt. No. 25 at 14), there is no indication that the Defendant would have safely exited the Dale Mabry Gate without harming MAFB Security Forces or military property and equipment. Further, there is no indication that the Defendant would not have returned later that night, still drunk, compromising the security of the base, and

in the interim, the public at large. Instead, the actions taken by MAFB Security Forces, in responding to a suspected drunk driver, attempting to enter through the Dale Mabry Gate onto MAFB, were common sense measures to maintain the security of the base and its surrounding citizenry. *See Kenny v. Easley*, 166 Fed.Appx. 898, 900-901 (9th Cir. 2006) (finding that the Plaintiff's temporary detainment by military personnel was not a violation of the Posse Comitatus Act where such detainment was founded in the military purposes of protecting the military base and its surrounding citizenry). As such, the Court finds that since the MAFB Security Forces's actions did not rise to the level of "posse comitatus or otherwise [executing] the laws," the MAFB Security Forces neither violated the Posse Comitatus Act, nor overstepped the proprietary jurisdiction of the United States at the Dale Mabry Gate.[2]

Lastly, even if the actions of the MAFB Security Forces were to be considered a violation of the Posse Comitatus Act, "it was not a willful violation of the spirit of the [Posse Comitatus

---

[2] The Defendant cites to no case law in making his proprietary jurisdiction argument. Instead, he states generally that MAFB Security Forces:

> had the right to stop Mr. Bennett, and to question him, and even to exclude him from the area as a civilian, but **no other law enforcement capabilities**, including, but especially not limited to detaining/arresting him for an additional 45 minutes until TPD showed to continue the detention/arrest, further interrogate, additionally search his vehicle and person, perform further FST's, and arrest Mr. Bennett for suspicion of the alleged violation of the DUI under the laws of the State of Florida.

(Dkt. No. 23 at 10.) Such a limitation of power, as the Defendant suggests, would lead to dangerous results, such as letting a suspected drunk driver proceed onto the streets of Tampa, Florida. As such, the Court agrees with the Government that there is "simply no basis in proprietary jurisdiction [] to constrain the actions of military law enforcement personnel, especially those acting at the gate to a sensitive military installation." (Dkt. No. 25 at 11.)

Act]; nor did it demonstrate any aggravated or repeated instance of violations that would require or even justify the application of the exclusionary rule." *United States v. Bacon*, 851 F.2d 1312, 1313 (11th Cir. 1988), *citing United States v. Walden*, 490 F.2d 372, 376 (4th Cir.1974); *United States v. Wolffs*, 594 F.2d 77, 85 (5th Cir. 1979) (" We need not decide that complex and difficult issue because, assuming without deciding that there was a violation, application of an exclusionary rule is not warranted. If this Court should be confronted in the future with widespread and repeated violations of the Posse Comitatus Act an exclusionary rule can be fashioned at that time.").

### B.     Probable Cause in Searching the Defendant's Residence

The Defendant also asserts that evidence should be suppressed because "the search of Mr. Bennett's on base residence was illegal as there was NO real Probable Cause to search his home for 'unregistered firearms or dangerous weapons.'" (Dkt. No. 23 at 16.) For a valid search warrant to issue for a residence, there must be some nexus between the criminal conduct in question and a residence. *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002). Such a decision is made by the issuing magistrate on the basis of the totality of the circumstances as to whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A reviewing court should review the decision of the issuing magistrate to ensure that there was a "substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-39 (quotation omitted).

As set forth in Detective Garcia's affidavit (Dkt. No. 25, Ex. 1), there are several factual circumstances that indicate that the Defendant likely had "evidence pertaining to the offense of

11

Possession of Unregistered Firearms ... on a Federal Military Installation" in his residence. (Dkt. No. 25, Ex. 1 at ¶ 4.) The Defendant had multiple weapons in his car, including multiple empty gun holsters, as well as a concealed, loaded weapon on his person. (Dkt. No. 25, Ex. 1 at ¶ 5.) Further, during the April 23, 2010 questioning at the Dale Mabry Gate, when the Defendant had these items in his car and on his person, the Defendant stated to MAFB Security Forces that he did not have any weapons in his car. The Defendant also told MAFB Security Forces that he was headed to his home, which was on MAFB. (Dkt. No. 25, Ex. 1 at ¶ 5.) Lastly, "investigator Koko MILLER conducted a weapons registration check with the Security Forces Armory which revealed BENNETT had no record of registering any firearms on base." (Dkt. No. 25, Ex. 1 at ¶ 5.) These facts, as stated in Detective Garcia's sworn affidavit, lead to several reasonable inferences.

First, it is a reasonable inference that where multiple dangerous weapons are found in a car, additional dangerous weapons may be found in a home, especially where the individual driving the car states that he is going to his residence. Secondly, where multiple empty gun holsters are found, it is a reasonable inference that the guns that correspond with the holsters may be stored in a different location. A typical place for guns to be kept would be in the home, again bolstering the fair probability that contraband would be found at the Defendant's residence. In addition, the Defendant lied about having weapons in his car, supporting an inference that he knew possessing the weapons on a military installation was in some way unlawful. Finally, the Defendant lied in order to obtain housing on MAFB. (Dkt. No. 25, Ex. 1 at ¶ 5.) The Defendant, while driving a car that included multiple dangerous weapons and wielding a loaded, concealed

12

weapon, attempted to enter MAFB to go to his residence. Once Detective Garcia determined that the Defendant had lied in order to obtain his on-base residence, there was a higher probability that the Defendant was using that residence to commit other violations, including violating the regulation requiring registration of weapons on MAFB. Lastly, Investigator Koko Miller found no records of the Defendant registering any weapons on MAFB. Since there was a sufficient nexus between the criminal conduct in question and the Defendant's residence, the Court finds that there is a substantial basis to support the magistrate's finding of probable cause for the search warrant in question.

Even if the Court were to find that the search warrant was not supported by probable cause, the Court still finds that the appropriate remedy in this case should not be the suppression of evidence. The Supreme Court held in *United States v. Leon* that evidence obtained by law enforcement acting in reasonable reliance upon a search warrant generally should not be suppressed, even where that search warrant is later found to be lacking in probable cause. *United States v. Leon*, 468 U.S. 897, 922 (1984). This exception applies unless one of the following circumstances exists: (1) the judge issuing a warrant was misled by knowingly or recklessly false information; (2) the issuing judge wholly abandoned his judicial role; (3) the affidavit supporting the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" or (4) the warrant itself is so facially deficient "that the executing officers cannot reasonably presume it to be valid." *United States v. Leon*, 468 U.S. 897, 922 (1984). While the Defendant does not discuss *Leon* in his Motion to Suppress, he does generally allege that "there was no logical tie or any evidence whatsoever before the military magistrate that Mr.

13

Bennett had unregistered weapons in his on base residence." (Dkt. No. 23 at 17.) In spite of this conclusory allegation, there is no evidence that the judge issuing the warrant was misled by false information, the judge wholly abandoned his judicial role[3], or that the warrant was so facially deficient that the executing officers could not reasonably presume it to be valid. Further, while the Defendant makes several argument concerning whether there was probable cause to issue the warrant in question, these arguments do not suggest, nor does the Court find, that the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 922 (1984).

### III. Conclusion

The Defendant has failed to show that the MAFB Security Forces acted in violation of the Posse Comitatus Act, or that probable cause did not exist in support of Detective Garcia's search warrant. Further, having established that the Defendant's forty-five (45) minute detainment was not unlawful, the Defendant's "fruit of the poisonous tree" argument is moot. Accordingly, and upon due consideration, it is **RECOMMENDED** that the Defendant's Motion to Suppress (Dkt. No. 23) be **DENIED**.

---

[3] At the April 12, 2011 hearing, the Defendant suggested that Military Magistrate Donald J. Barnes, who issued the warrant in question, would not necessarily be able to remain neutral in evaluating applications for warrants regarding possible unregistered weapons on MAFB, since he lives on MAFB and may be concerned as to his personal security on the base. As stated at that hearing, the Court finds this argument unpersuasive.

14

**IT IS SO REPORTED** at Tampa, Florida, this 19th day of April, 2011.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

Copies furnished to:

The Honorable Virginia M. Hernandez Covington

Counsel of Record