UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA  DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 8:11-CR-14-T-33AEP

SCOTT ALLAN BENNETT

GOVERNMENT'S PRE-TRIAL MEMORANDUM

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney, and files this memorandum in advance of trial in the above captioned case.  The government intends to introduce, and has given defense counsel notice of its intention to introduce,[1] admissible intrinsic evidence that is inextricably intertwined with the crimes charged in the Superseding Indictment, and therefore not subject to Fed. R. Evid. 404(b), as well as admissible extrinsic evidence under Rule 404(b).  Further, in the event that the defendant chooses to testify in this case, the government intends to impeach him with evidence of a prior offense that involves dishonesty pursuant to Fed. R. Evid. 609(a)(2).  Finally, the United States writes in support of its proposed jury instructions, as opposed to those submitted by the defendant.

---

[1]     The United States provided notice of its intent to introduce evidence under Rule 404(b) generally on February 4, 2011, and specifically as to the topics discussed in this notice on April 20, May 5, and July 6, 2011.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**A.      Facts To Be Offered at Trial**

The government believes that the evidence will show that on or about January 20, 2010, the defendant, Scott Allan Bennett, obtained passage on a U.S. military aircraft by stating that he was an active duty military member on "emergency orders" to MacDill Air Force Base (AFB) in Tampa, Florida.  During the flight, the defendant wore his military uniform.  Admiral Eric T. Olson, the Commander of U.S. Special Operations Command, was among the passengers on the flight, although he flew in a separate compartment from the one in which the defendant was located.

The next day, on January 21, 2010, the defendant entered the Base Housing Office on MacDill Air Force Base (AFB) and applied for on-base housing.  At this time, only active duty military members were permitted to live on MacDill AFB, a requirement that the defendant was aware of from previous communications with the Base Housing Office.  The defendant was dressed in an Army uniform during this meeting and claimed to several Housing Office employees that he was serving as an aide to Admiral Olson.  The defendant further stated that Admiral Olson had directed him to obtain housing on base as quickly as possible.  These statements were lies, and the defendant was not permitted to wear a military uniform while he was not on active duty.

The defendant also told Housing Office employees that he would bring in his military orders in a few days.  When a Housing Office employee requested a copy of Bennett's orders a few days later, the defendant replied that his orders were "top secret" and that he would have to get clearance to release them.  The defendant had no such orders.

Also on January 21, 2010, the defendant completed a written application for housing on-base.  On this application, the defendant stated that he was in the U.S. Army and that he was currently on active duty for an "ongoing" period of time.  He noted that his "incoming unit assignment" was U.S. Central Command (CENTCOM) and that he was reporting to MacDill AFB from a "dependent restricted/remote tour."  Again, all of these statements were deliberate lies.

On the basis of the defendant's oral statements and his assertions on his housing application, a U.S. government employee approved the defendant's application for housing on-base.  The defendant signed a lease and moved into an apartment located on MacDill AFB on or about January 29, 2010.  Along with a copy of his lease agreement, the defendant received a copy of the Base Housing Resident Handbook, which included the requirement that all firearms be registered with the Base Armory before they were present in on-base housing.

 In the early morning hours of April 23, 2010, the defendant was selected for random screening as he was entering MacDill AFB from the Dale Mabry Gate.  The defendant consented to the screening.  During the course of this screening, a Security Forces officer discovered two knives and an empty gun holster in the defendant's car.  When asked by the officer if there were additional weapons in the car, the defendant said there were not.

Also during the course of the inspection, the Security Forces officer conducting the screening formed a belief that the defendant was under the influence of alcohol while operating his vehicle.  Security Forces therefore called in the Tampa Police (TPD) for a suspected DUI.  Bennett failed a field sobriety test administered by a TPD officer

3

and was arrested.[2]  The defendant was searched subject to arrest, and a concealed, loaded handgun was discovered on his person.  TPD also conducted an inventory search Bennett's vehicle and discovered another loaded handgun, three additional knives, and additional other weapons.  During the course of his interaction with TPD officers, the defendant stated that he was an active duty reservist and that he carried his concealed handgun on MacDill AFB.  These statements were recorded by a video camera and audio device associated with one of the TPD patrol cars.

At approximately 1:45 p.m. on April 23, 2010, the defendant returned to the Dale Mabry Gate at MacDill AFB.  By this time, an order had been promulgated barring him from entering the Base.  At the gate, he was intercepted by Detective Edward Garcia of Security Forces.  The defendant consented to a search of his car at this time.  Detective Garcia found four empty firearms holsters, pepper spray, and a plastic punch knife in the defendant's car.

Detective Garcia asked the defendant for permission to search his residence, and Bennett refused.  Detective Garcia sought and was subsequently granted permission to search the defendant's residence by a military magistrate.  During the search of the defendant's residence on MacDill AFB, the following items were found in the home: seven loaded firearms; 9,389 additional rounds of ammunition; approximately 20 knives; and other weapons.  The defendant did not register any of the firearms found in his residence or his car as required by MacDill Air Force Base Instruction 31-101, the Installation Security Instruction.  Further, the Instruction prohibits any person from

---

[2]     The DUI charges against the defendant have been dismissed.

carrying concealed weapons on MacDill AFB.  The defendant was given notice of these prohibitions in the Base Housing Resident Handbook and in signage in front of the Dale Mabry Gate to MacDill AFB.

Based upon the facts described above, the government believes that the following intrinsic evidence will be introduced in its case-in-chief:

a.      The defendant flew to MacDill AFB on January 20, 2010, in a military aircraft.

b.      The defendant was investigated and arrested for DUI on April 23, 2010. The government believes that this evidence is inextricably intertwined with the evidence of the defendant's commission of the crime charged in the Superseding Indictment in the above-captioned case and is admissible because it is relevant and more probative than prejudicial.  See Fed. R. Evid. 402 and 403.

The government also intends to introduce the following extrinsic evidence pursuant to Fed. R. Evid. 404(b) in its case-in-chief:

a.      The defendant's actions in December 2006 regarding attempting to aid and abet the unlawful entry into the United States of an illegal alien by way of false statements.[3]

b.      The defendant's actions in April 2011 in attempting to gain entrance to Joint Base Myer-Henderson Hall, in Arlington, Virginia, while in a police uniform.

_____

[3]      The defendant was convicted of a violation of 8 U.S.C. § 1325(a)(3) related to his actions in December 2006.  This conviction will be further discussed herein.

5

      c.      The defendant's actions in June 2011 in falsely gaining entrance to a closed event at the Embassy of Finland, in Washington, D.C., while wearing his military uniform without authorization.

The above extrinsic evidence goes to the defendant's intent and lack of mistake in the charged crimes.  The defendant has placed his intent at issue by contesting the charges against him.  Thus, the government believes this evidence is relevant, probative, and admissible for permissible purposes under Fed. R. Evid. 404(b), i.e., to show intent and absence of mistake.  See Fed. R. Evid. 402, 403 and 404(b).

**B.**    **Jury Instructions**

In anticipation of trial, the parties in this matter filed proposed jury instructions on July 6, 2011.  The defendant objected to some of the United States' proposed jury instructions, including numbers 11 (false exculpatory), 17 (on or about; knowingly; willfully - generally); 19 (special instruction regarding 18 U.S.C. § 702); and 20 (special instruction regarding 50 U.S.C. § 797).  Dkt. No. 58 at 35.  As to instructions numbers 17, 19, and 20, the defendant offered alternative instructions.  Id. at 16-20, 30-35.  Further, the defendant proposed that the Court instruct the jury as to a good faith defense.  Id. at 27.  The United States' proposed jury instructions correctly state the law, and the defendant is not entitled to his requested jury instructions.

## II.  LEGAL ARGUMENT

**A.**     **The intrinsic, extrinsic, and impeachment evidence offered by the United States is admissible.**

**1.     Legal Standards**

Federal Rule of Evidence 404(b) bars the admission of "[e]vidence of other crimes, wrongs, or acts"  to prove action in conformity with a person's character.  Fed. R. Evid. 404(b).  However, this evidence may be admitted for other purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Id.  This list of other purposes included in the Rule is not meant to be exhaustive, and the possible relevancy of the evidence outside the ban is infinite. United States v. Ellisor, 522 F.3d 1255, 1267 (11th Cir. 2008).  "Rule 404(b) is a rule of inclusion, and accordingly, '404(b) evidence, like other relevant evidence, should not be lightly excluded when it is central to the prosecution's case.'"  United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003) (citing United States v. Perez-Tosta, 36 F.3d 1552, 1562 (11th Cir. 1994)).

There are three criteria guiding the admission of 404(b) evidence: (1) the evidence must be relevant to an issue other than the defendant's character, which can include intent, knowledge, or absence of mistake or accident; (2) there must be sufficient proof to enable the jury to find that the defendant committed the acts in question; and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice, satisfying a Rule 403 balancing test.  United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007).

The Rule 403 balancing test is struck in favor of admissibility.  United States v. Terzado-Madruga, 897 F.2d 1099, 1117 (11th Cir. 1990).  "Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence."  United States v. Betancourt, 734 F.2d 750, 757 (11th Cir. 1984).  Naturally, "[a]ll evidence which tends to establish the guilt of the defendant is, in one sense, prejudicial to that defendant."  Terzado-Madruga, 897 F.2d at 1119 (internal quotation and citation omitted).  Damaging or prejudicial evidence need not be excluded; it is only when evidence is unfairly prejudicial, specifically, when the prejudice of evidence "substantially outweigh[s]" its probative value, that the evidence must be excluded.  Id.

One of the issues for which 404(b) evidence may be admitted is to prove the defendant's intent in committing the charged crimes.  When a defendant chooses to plead not guilty, he puts his intent at issue in the trial.  See United States v. Matthews, 431 F.3d 1296, 1310-12 (11th Cir. 2005) (not guilty plea in drug conspiracy makes intent a material issue); see also United States v. King, 195 F. App'x 867 (11th Cir. 2006) ("defendant's not guilty plea made his intent a "material issue" ).  Thus, the government should be permitted to introduce all available evidence of the defendant's intent when the defendant places his intent at issue.

Fed. R. Evid. 404(b) does not bar the admission of evidence of other acts that are inextricably intertwined with the acts charged in the government's charging document.  Thus, a threshold consideration with respect to evidence of other acts is "whether the evidence in question is actually extrinsic evidence and therefore subject to 404(b) analysis."  United States v. Muscatell, 42 F.3d 627, 630 (11th Cir. 1995).

8

Evidence that is intrinsic (not extrinsic) to the crimes charged includes:  (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense; (2) events necessary to complete the story of the crime, or (3) facts inextricably intertwined with the evidence of the charged offense.  Edouard, 485 F.3d at 1344 (internal citations omitted).

"Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive, and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998).  Further, "evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted.  Edouard, 485 F.3d at 1344.  Intrinsic evidence must still pass a Rule 403 balancing test.  United States v. Richardson, 764 F.2d 1514, 1522 (11th Cir. 1985).

Under Fed. R. Evid. 609(a)(2), any conviction involving dishonesty or a false statement, regardless of the length of the possible sentence, "shall be admitted" to impeach any witness, including the defendant.  A crime involves dishonesty or a false statement when "it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness." Id.

### 2.      Other Acts Intrinsic to the Acts Charged

The government intends to introduce evidence of two acts that it believes are intrinsic to the charged offenses.

     a.      The defendant flew to MacDill AFB on January 20, 2010, in a military aircraft after falsely representing himself as being on active duty orders and while wearing a military uniform without authorization.

     b.      The defendant was investigated and arrested for DUI on April 23, 2010; during the course of the investigation of the defendant's DUI, the defendant made statements to a TPD officer that he was an active duty member of the U.S. Army Reserves and that he carried a loaded, concealed weapon on MacDill AFB.

Both of these acts are intrinsic evidence under McLean, in that they constitute "evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive, and set-up of the crime, [that] is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." McLean, 138 F.3d at 1403.

Starting with the military flight on January 20, 2010, this evidence explains how the defendant first arrived at MacDill AFB, as well as providing context for his false claims that he served as an aide to Admiral Olson and was directed to obtain housing in conjunction with that service.  Without this context, the jury will be hampered in understanding the genesis of the defendant's false statements at the Base Housing Office.

10

As to the evidence that the defendant was investigated and arrested for DUI on April 23, 2010, this circumstance is essential in explaining why the defendant's car was searched by Tampa Police Department (TPD) Officers, leading to the discovery of a loaded concealed firearm on his person and another in his car, behavior that is the basis of the charge in Count Three of the Superseding Indictment.  This evidence is thus essential to proving the defendant's guilt of Count Three, as well as explaining the genesis of the government's investigation in this case.  See McLean, 138 F.3d at 1404 (evidence is intrinsic if it explains why the defendant was a target of a government investigation).

Further, during the course of an interview with TPD Officer Joseph Sustek, the defendant falsely stated that he was active duty, a statement that was recorded by Officer Sustek's dashboard camera.  See Ex. 1 (transcript of TPD encounter).  The defendant also admitted to Officer Sustek that he carried concealed firearms on MacDill AFB.

Both of these categories of evidence should be admitted because their probative value is not substantially outweighed by any unfair prejudice to the defendant.  See Fed. R. Evid. 403. "Unfair prejudice, as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  Old Chief v. United States, 519

U.S. 172, 180 (1997) (citation and quotation omitted).  Here, however, there is no unfair

prejudice to the defendant that cannot be cured by a limiting instruction.[4]  See, e.g.,

United States v. Simpkins, 240 F. App'x 334, 340 (11th Cir. 2007); United States v.

Hernandez, 896 F.2d 513, 523 (11th Cir.1990).

As to the military flight on January 20, 2010, the evidence is clearly highly

probative of the defendant's intent and knowledge of his lies to Base Housing officials

the next day.  On January 20, 2010, the defendant obtained passage on a military flight

and was wearing a military uniform at the time.  He stated to passengers on the flight

that he was flying to MacDill AFB to fulfill active duty military orders.  The evidence is

not unfairly prejudicial to the defendant because it cannot lead the factfinder into

declaring guilt on a different ground than those charged.

As to the investigation of the defendant for DUI, the government seeks only to

introduce the fact that such an investigation took place, as well as the video taken

during the investigation and arrest of the defendant to demonstrate how the weapons

were discovered on the defendant, as well as to present the defendant's incriminating

statements to the jury.  Given that the defendant's incriminating statements were made

after he was arrested and while he was being searched incident to arrest by Officer

Sustek, there is little way that the fact of such an arrest could be hidden.  The evidence

at issue here is key to proving the elements of one of the government's charged counts

---

[4]     Such a limiting instruction can include language that the jury should not let
the investigation and arrest of the defendant for DUI, or his misstatements to the
passengers on the military flight on January 20, 2010, effect its determination on the
charged offenses.  The Court could also instruct the jury that the DUI charges against
the defendant had been dropped, if requested by the defendant.

as it demonstrates that the defendant carried a loaded concealed weapon on MacDill AFB.

The government would also elicit testimony that the DUI charges against the defendant were subsequently dropped.  Again, a limiting instruction from the Court instructing the jury that the purpose of the evidence is to provide context for the charged crimes should cure any unfair prejudice that could result from the government's evidence.  Regardless, the highly probative value of the evidence is clearly not substantially outweighed by any unfair prejudice that may result to defendant.

### 3.      Other Acts Constituting Admissible 404(b) Evidence

The government seeks to introduce extrinsic evidence of the following events:

a.      The defendant's actions in December 2006 regarding attempting to aid and abet the unlawful entry into the United States of an illegal alien by way of false statements.  This evidence will be introduced through a certified copy of a statement of facts signed by the defendant and filed in the U.S. District Court for the District of Columbia.

b.      The defendant's actions in April 2011 in attempting to gain entrance to Joint Base Myer-Henderson Hall, in Arlington, Virginia, while in a police uniform without authorization.  This evidence will be introduced through eye witness testimony.

c.      The defendant's actions in June 2011 in falsely gaining entrance to a closed event at the Embassy of Finland, in Washington, D.C., while wearing his military uniform without authorization.  This evidence will be introduced through eye witness testimony.

13

The government acknowledges that each of these events are extrinsic to the charged

crimes, and thus are government by Rule 404(b) and the guidelines articulated in

Edouard apply.  As noted above, the extrinsic evidence must be relevant to an issue

other than the defendant's character, such as knowledge, plan, or opportunity.

Fed.R.Evid. 404(b); Edouard, 485 at 1344.  Second, there must be sufficient proof the

defendant committed the acts in question.  Id.  And the evidence must be more

probative than prejudicial.  Id.

Each of these acts is relevant to the defendant's intent to make false statements,

as well as the absence of mistake or accident related to the charged offenses.[5]  By

pleading not guilty, the defendant has placed his intent at issue, "which imposes a

substantial burden on the government to prove intent, which it may prove by qualifying

Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an

issue."  United States v. Zapata, 139 F.3d 1355, 1358 (11th Cir.1998).  Further, the

defense has provided the government with a summary of an expert witness that it

---

[5]     Two of the acts at issue occurred after the charged conduct, but such acts
are properly offered under Rule 404(b), so long as the other elements of the test are
met.  See, e.g., United States v. Hurley, 755 F.2d 788, 790 (11th Cir. 1985); United
States v. Terebecki, 692 F.2d 1345, 1349 (11th Cir. 1982) (noting that "the extrinsic
offense was committed fifteen months after the charged offense"); United States v.
Mares, 441 F.3d 1152, 1157 (10th Cir. 2006) ("Subsequent acts evidence is particularly
relevant when a defendant's intent is at issue."); United States v. Zamora, 222 F.3d 756,
762 (10th Cir. 2000) (evidence of subsequent robbery properly admitted under 404(b) to
prove knowledge, intent and lack of mistake).

intends to call;[6] the summary clearly indicates that part of the defense in this case will center on the idea that the defendant was "confused" regarding his duty status.  Ex. 2 (letter summarizing proposed testimony), at ¶ c.1.[7]  In light of the fact that the defendant's intent to make the false statement must be willful, the government should be permitted to introduce extrinsic evidence that demonstrates the defendant's intent.

"Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses." United States v. Dorsey, 819 F.2d 1055, 1059 (11th Cir.1987). Thus, where the state of mind required for the charged and extrinsic offenses is the same, the first prong of the Rule 404(b) test is satisfied. Id.; United States v. Ellisor, 522 F.3d 1255, 1267-68 (11th Cir. 2008); Edouard, 485 F.3d at 1345; United States v. Dickerson, 248 F.3d 1036, 1047 (11th Cir. 2001).

Here, as to each of the proposed acts, the defendant acted willfully, the same intent required to prove the defendant guilty of the charged violation of 18 U.S.C. § 1001.  As to the December 2006 actions, willfulness is an element of the crime with

---

[6]     Contemporaneously with the filing of its Pre-trial Memorandum, the United States is also filing a motion in limine to exclude the testimony of the defense's proposed expert.

[7]     Further, the defendant has requested that the Court instruct the jury that he must have specific intent to violate the law before he can be convicted under Pattern Basic Jury Instruction 9.1B, making it even more essential that the United States be permitted to introduce 404(b) evidence of the defendant's intent.  As will be discussed herein, the appropriate definition of willfulness in this case is that the defendant acted with the intent to do something the law forbids.  Pattern Basic Jury Instruction 9.1A.

which the defendant was eventually charged.  See Ex. 3 (judgement);[8] 8 U.S.C. §

1325(a)(3) (prohibiting any person from attempting "to enter or obtain[ ] entry to the

United States by a willfully false or misleading misrepresentation or the *willful*

concealment of a material fact") (emphasis added).

As to the other two incidents,[9] the defendant's actions in attempting to gain

entrance to a closed military base by falsely stating that he was a police officer

demonstrates willful deceit.  And, at the Finnish Embassy, the defendant wore a military

uniform without authorization and stated that he had just returned from service in

Afghanistan, again demonstrating willful deceit.

Additionally, the evidence is properly admitted to show absence of mistake where

the defendant's primary defense is likely to be one of inadvertence, i.e., that he did not

intend to mislead the Base Housing employees.  Evidence of similar acts by defendants

have been introduced where defendants' have raised the idea that an "innocent

interpretation" could be applied to the government's evidence.  United States v. Brown,

393 F. App'x 686, 707 (11th Cir. 2010) ("The evidence of Brown's prior conviction for

making false statements in mortgage fraud applications was properly introduced to

establish his criminal intent and to rebut his claim that the misstatements were

accidental or merely mistakes."); United States v. Lamons, 532 F.3d 1251, 1266 (11th

Cir. 2008) ("Rather than creating a primary inference of Lamons' character or his

propensity to commit criminal acts, the evidence instead permitted the inference that

---

[8]     Counsel for the United States has certified copies of this document and
has provided the document to defense counsel as part of discovery.

[9]     These two acts will be testified to by eyewitnesses.

Lamons deliberately set the fire based on the improbability of accident."); United States v. Jernigan, 341 F.3d 1273, 1281-82 (11th Cir. 2003) (holding that the fact that the defendant knowingly possessed a firearm on a previous occasion makes it more likely that he knowingly did so in the instant case, and not because of accident or mistake); see also United States v. Greenwood, 796 F.2d 49, 53 (4th Cir. 1986) ("The existence of prior similar wrongdoings reduces the plausibility of a defense of inadvertence or accident."); cf. United States v. Matthews, 431 F.3d 1296, 1313 n. 1 (11th Cir. 2005) (Tjoflat, J., specially concurring) (noting that evidence of an extrinsic offense "is more appropriately admissible for non-propensity purposes," such as establishing intent, where "an inference can be drawn that says nothing about the defendant's character, for example, based on the 'improbability of coincidence' ") (citation omitted).

The second element under the Edouard standard is established as well in as much as the government can produce certified copies of a prior admission by the defendant relevant to his conduct in 2006 and eyewitnesses to his actions subsequent to the indictment in this case.  See Jernigan, 341 F.3d at 1282 (a conviction is sufficient proof that the defendant committed the prior act) (internal citations omitted).

Finally, the evidence of the defendant's prior conviction and other acts are probative and are not *substantially* outweighed by any unfair prejudice to the defendant In making this evaluation, courts may consider "whether it appeared at the commencement of trial that the defendant would contest the issue of intent, the overall similarity of the charged and extrinsic offenses, and the temporal proximity between the charged and extrinsic offenses."  Edouard,  485 F.3d at 1345.

Here, the defendant's not guilty plea, as well as the expert summary submitted

17

by his counsel and his proposed jury instruction on willfulness, indicate that his intent is at issue in this case.  Each of the proposed topics of 404(b) evidence involves a similar offense, in that the defendant either made false statements or wore a U.S. military uniform without authorization.  Significantly, as the two offenses subsequent to the indictment, the defendant's actions are exactly the same in terms of his intentions to gain access to a facility without authorization.

As to the offense in 2006, although the subject matter of the defendant's false statements is different, the offense still requires the defendant make a willful misstatement.  Further, in that instance as well as in this one, the defendant greatly exaggerated his connection to significant government figures.  A "Statement of Offense" filed in conjunction with the defendant's guilty plea related to his actions in 2006 reveals that the defendant created out of whole cloth an internship program in order to help an alien gain entry to the United States.  Ex. 4 (Statement of Offense).[10]   The defendant told consular officials that the alien would be working for the President of the United States, as well as asserting that he himself worked in conjunction with the United States Department of State and the Executive Office of the President of the United States, in addition to other organizations.  None of these statements were true.  The statement was signed and acknowledged by the defendant.

Finally, the temporal proximity between all of these offenses is within such a time period as to make the defendant's other acts relevant to his intent in this case.  See id. at 1346 (finding acceptable time gaps of 5, 6, and 15 years).   Further, any unfair

---

[10]     Counsel for the United States has certified copies of this document and has provided the document to defense counsel as part of discovery.

prejudice that may exist can be mitigated by a curative instruction given by the Court regarding the nature and purpose of 404(b) evidence.  Id. at 1346; see also Government's proposed jury instructions, Dkt. No. 56, at 13 (Cautionary Instruction regarding 404(b) evidence) and 27 (Similar Acts Evidence Instruction).

### 4. Evidence of Defendant's Prior Crime Involving Dishonesty Admissible to Impeach Him

On or about September 15, 2008, the defendant was convicted of a misdemeanor violation of 8 U.S.C. § 1325(a)(3), attempting to aid and abet the improper entry of an alien by false statement, in the United States District Court for the District of Columbia.  Ex. 3.  (This conviction resulted from the defendant's actions in 2006, as discussed above, which the government is seeking to introduce as 404(b) evidence.)  The statute at issue prohibits any one from attempting "to enter or obtain[ ] entry to the United States by a willfully false or misleading misrepresentation or the willful concealment of a material fact."  The statutory language makes clear that the defendant's offense of conviction involves "an act of dishonesty or false statement," as required for admission by Fed. R. Evid. 609(a)(2).

In addition to the statutory elements, the "Statement of Offense" filed in conjunction with the defendant's guilty plea to the offense, ex. 4, indicates the wilfulness of his misstatements in that case.  Under United States v. Burston, the government is entitled to cross-examine the defendant about the nature of his prior conviction, in addition to the fact that such prior conviction exists.  159 F.3d 1328, 1335-36 (11th Cir. 1998).  Thus, the defendant's prior conviction is admissible to impeach him should he choose to testify.

19

**B.     The proposed jury instructions submitted by the United States correctly state controlling law.**

**1.     False Exculpatory (Government's Requested Jury Instruction # 11)**

The evidence at trial will indicate that the defendant has made false exculpatory statements to law enforcement officers relevant to the facts of this case.  Specifically, the defendant stated to Technical Sergeant Gerrod Klein and TPD Officer Mark Barry, when they questioned him about his authority to live on base, that he was living on MacDill Air Force Base because of a special understanding with his civilian employer. The government expects other testimony at trial to demonstrate that this statement was false.  In such circumstances, the Eleventh Circuit has held that false exculpatory statements provide independent evidence of the defendant's guilt.  See United States v. Brown, 393 F. App'x 686, 707 (11th Cir. 2010) (citing United States v. Smolin, 182 F.2d 782, 786 (2d Cir. 1950) ("[E]xculpatory statements ... when shown to be false, are circumstantial evidence of guilty consciousness and have independent probative force.")).  Further, if the defendant decides to take the stand, he may make additional statements during his testimony that are proved false at trial.  Thus, a false exculpatory instruction is appropriate in this case.

**2.     Willfully and Good Faith Defense (Government's Requested Jury Instruction # 17)**

The defendant requests that Pattern Basic Instruction 9.1B, regarding the definition of willfulness in the context of a known legal duty, be given in this case.  This definition of willfulness is given only in cases involving a very limited number of specific charges where courts have determined that a defendant must know of the specific

statute he is violating.  See Commentary to Pattern Basic Instruction 9.1A (noting that particularized knowledge of the law is required in tax and currency structuring cases). According to the Supreme Court, the instruction "carv[es] out an exception to the traditional rule that ignorance of the law is no excuse."  Bryan v. United States, 524 U.S. 184, 195 (1998).  In all but the most limited situations, such as violations of tax laws, a showing of willfulness does not require the government to prove that the defendant was aware of the specific law he was violating, only that "the defendant acted with knowledge that his conduct was unlawful."  Id. at 191-92; see also Cmt. to Basic Special Instruction 9.1A (applying the higher willfulness standard only in tax and currency-structuring prosecutions).

In this case, two statutes charged require a willful violation of law: 18 U.S.C. § 1001 and 50 U.S.C. § 797.  The appropriate definition of willfulness as to both statutes is given by pattern instruction 9.1A, that is, that the defendant acted "with the intent to do something that the law forbids."  As to 18 U.S.C. § 1001, the willfulness standard is well-established, see cmt. to Pattern Offense Instruction 37 ("The committee believes that the general definition of 'willfully' in Basic Instruction 9.1A would usually apply to this crime."), and no case that the undersigned can find has ever applied the higher, specific-intent willfulness standard to this statute, regardless of the topic of the defendant's false and fraudulent statements.  As to 50 U.S.C. § 797, the willfulness standard applied should be the standard one, not the one applied to only specific statutes.

The defendant argues that the government must prove his specific intent to violate the law (i.e., his knowledge of the law) because "military law requires

particularized knowledge and familiarity with the complexities of the various types of military duty status under federal code." Dkt. No. 58, at 17. This argument, however, goes more to whether the government has met its burden to show that the defendant acted with knowledge that his *conduct* was unlawful, rather than providing support for the idea that the government must show the defendant was aware of the *specific laws* he violated. See Bryan, 524 U.S. at 195 (noting that "the danger of convicting individuals engaged in apparently innocent activity" is mitigated where the government must show that the defendant "knew his conduct was unlawful"). Bryan itself involved the complex statutory scheme governing whether an individual may lawfully engage in dealing firearms without a federal license. This federal licensing scheme is at least comparable in terms of complexity to the statutory scheme that the defendant is charged with. See also United States v. Cabrera, 284 F. App'x 674, 684-85 (11th Cir. 2008) (knowledge of law not required in context of "complicated regulatory field"governing prescription drugs); United States v. Starks, 157 F.3d 833, 838 (11th Cir. 1998) (same regarding anti-kickback provisions of the Social Security Act). Thus, Eleventh Circuit law establishes that it is inappropriate to instruct the jury that the defendant must have had specific knowledge of the statutes he is charged with violating.

The defendant also requests that an instruction be given regarding a potential good faith defense. Dkt. No. 58, at 27. However, as the full title of the pattern instruction indicates, this instruction is typically given in the context of tax charges that require an intent to defraud. Pattern Special Instruction 9 (Good-Faith Defense to Wilfulness (*as under the Internal Revenue Code*)) (emphasis added). The charges here

22

do not involve taxes, nor do they require an intent to defraud on the part of the defendant.  Further, there is no evidentiary basis in fact or in law in this case to instruct the jury as to the defendant's good faith.  Cmt. to Pattern Special Instruction 9.

### 3.    Wearing a Uniform of the Armed Forces without Authorization (Government's Requested Jury Instruction # 19)

The defendant provides two alternate versions of a proposed instruction regarding 18 U.S.C. § 702, which prohibits an person from wearing a uniform of the armed forces of the United States without authorization.  There are no pattern jury instructions for this offense, but both parties agree that the crime has three elements:

(1)    the defendant was in a place within the jurisdiction of the United States;

(2)    the defendant wore a uniform, or a distinctive part thereof, or anything similar to a distinctive part thereof, of any of the armed forces of the United States; and

(3)    the defendant wore such item without authorization.

The defendant's objections to the government's instructions appear to be two-fold: first, that the Court should not instruct the jury that MacDill AFB is a place within the jurisdiction of the United States; and second, that federal law, namely Title 10, governs when a reservist may wear a military uniform.

As to the jurisdictional point, case law is clear that jurisdiction is a legal issue for the Court to determine, while the jury's role is to determine the situs of the offense. See, e.g., United States v. Gipe, 672 F.2d 777, 779 (9th Cir.1982) ("While federal jurisdiction over the place may be determined as a matter of law, the locus of the offense within that place is an issue for the jury.").  MacDill AFB is subject to the jurisdiction of the United States pursuant to 18 U.S.C. §§ 5 and 7(3).  Thus, there is no

question that, as a legal matter, MacDill AFB falls within federal jurisdiction.  The jury may determine if the defendant was in fact within MacDill AFB at the time when he is charged with wearing a military uniform.

As to the issue of what law governs when an individual may wear a military uniform, the defendant cites to Army Regulation 670-1, while the United States contends that the dictates of the United States Code apply.  While Army Regulations may apply in the context of an individual serving on active duty or being charged with a court martial under the Uniform Code of Military Justice, the United States Code should apply in this case, see 10 U.S.C. § 702, which is a federal criminal prosecution.  Thus, the government's proposed instruction is the proper one.

### 4.    Violation of Defense Property Security Regulations (Government's Requested Jury Instruction # 20)

The defendant also provides an alternate version of a proposed instruction regarding 50 U.S.C. § 797, which prohibits an person from violating a defense property security regulation.  There are no pattern jury instructions for this offense, but both parties agree that the crime has two elements:

(1)    the defendant willfully violated a defense property security regulation; and

(2)    the property at issue is a defense property.

The difference between the instruction submitted by the United States and that submitted by the defendant is that the United States proposes instructing the jury on the dictates of the defense property security regulation at issue.  Without such instruction on

24

the content of the relevant defense property security regulation, it is difficult to see how the jury could apply the law in this case.  Thus, the jury should be instructed as to the provisions of the regulation that the defendant violated.

Respectfully submitted,

ROBERT E. O'NEILL
United States Attorney


By:      *s/Sara C. Sweeney*
SARA C. SWEENEY
Assistant United States Attorney
United States Attorney No. 0000119
400 North Tampa Street, Suite 3200
Tampa, Florida  33602
Telephone:  (813) 274-6000
Facsimile:  (813) 274-6178
E-mail:  sara.sweeney@usdoj.gov

**U.S. v. BENNETT**                                **Case No. 8:11-CR-14-T-33AEP**

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 13, 2011, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system which will send a notice of electronic

filing to the following:

David F. Chalela, Esq.

Ariel O. Garcia, Esq.

By:     _s/Sara C. Sweeney_
        SARA C. SWEENEY
        Assistant United States Attorney
        United States Attorney No. 0000119
        400 North Tampa Street, Suite 3200
        Tampa, Florida  33602
        Telephone:  (813) 274-6000
        Facsimile:  (813) 274-6178
        E-mail:  sara.sweeney@usdoj.gov