# EXHIBIT 2

# THE LAW OFFICES OF DAVID CHALELA, P.A.
David F. Chalela, Esq.
3111 W. MLK Blvd, Suite 100
Tampa, FL 33607
phone (813) 368-0822
fax (813) 350-7801

Office of the U.S. Attorney                                July 1, 2011
Sara C. Sweeney, Esq.
400 N. Tampa St, Suite 3200
Tampa, FL 33602

Re: US. v. Scott Bennett

Dear Sara C. Sweeney:

      Pursuant to the government's requests for expert witness summary under the Federal Rule of Criminal Procedure 16(b), the defense provides the following:

The Defense intends to call retired Major Mark P. Brewer as an expert in military protocol, standards, and procedures. See attached resume, previously sent on May 26, 2011.

   a. Witness's contact information:
      Mark P. Brewer
      2033 Main Street Ste. 306
      Sarasota, Florida 34237-6062
      941.316.8348-Extension 304
      941.316.8351 fax
      mbrewer@flrc2.com

   b. Witness's qualifications: Mr. Brewer is a retired Major from the U.S. Army, Mr. Brewer spent two decades training and supervising hundreds of troops, including officers and enlisted personnel. Mr. Brewer is a former U.S. Army Assistant Staff Judge Advocate, as well as a former Army War Crimes Prosecutor. See resume attached and previously sent on May 26, 2011.

   c. The Witness's opinions:
     1. Mr. Brewer will testify about the various types of Active Duty and Reserve military status, how the status is changed, the statutory basis for duty status, the type of duty the Defendant has been on, the learning curve of new troops to understand how duty status and its changing nature works. It is Mr. Brewer's opinion that new military personnel are renowned for being confused regarding the various types of duty status, the manner in which the status is changed, and it is common for a troop to take months to years to have a firm grasp on the subject. He further opines that Second Lieutenants are renowned for being confused and committing errors on this and various other military subjects.

The basis and reasons for the opinion: in his two decades of training and experience, both personally having once been a new officer and having trained dozens of new officers, Mr. Brewer is familiar with the complexities of duty status and the time required of new trainees in acquiring a firm grasp on the subject.

2. Mr. Brewer will also testify aboutthe housing application process and its complexities. It is the opinion of Mr. Brewer that the housing application process is a paperwork intensive process as well as a very confusing process, especially for new troops with no previous experience in the bureaucracy of the process. He will give a general history of the change in on-base housing from government to privatized housing. He will give his opinion on work productivity differences between military employees and civilian employees, specifically that in general, the quality, reliability, and integrity of the contracted civilian employees is highly inferior to that of military troops. He will testify as to civilian contractors in general having worse attitudes on the job, the lesser quality of work product, the higher incidents of sloppy and/or inaccurate paperwork delivered by civilian contractors to the government, the differences seen on military bases since privatization of housing regarding decreased quality for the troops, the decrease in quality of customer services to applicants for housing, the increase of incidents of inferior work product by civilian contractors andon base housing in general. He will testify what life is like living on base, the Permanent Change of Station (PCS) Process, how it works, the timing involved, moving on to base, how military housing renters are moved on to base, the timing for moving on to base, new officers and troops moving on to base versus experienced personnel, the types of paperwork required of anyone moving on to base, the timing expected of those moving on to the base, the timing expected of those recently moved on to base, the benefits of moving on to base versus the benefits of living off base (including in general and also regarding differences in pay received by individual troops). It is his opinion that no one can possibly fill out all the PCS paperwork "immediately" as required by the military, and that in fact it is not possible. He opines that everyone in the military knows this, and that great latitude is normally given to those PCSing on base in turning in their paperwork, since the legal time standardsare not possible to adhere to.

3. Mr. Brewer will testify as to what it means to be a new officer or new enlisted troop in the military. He will talk about the various common mistakes they make, and how those mistakes are generally treated and/or disciplined within the Army. He will talk about the level of respect and lack of respect given to new troops, including new officers. He will discuss how they are mentored, and by whom.

4. Mr. Brewer will also testify about the prosecution process in the military, in terms both of courts-martial and in the civilian capacity. He will explain the various types of court and administrative proceedings available to commanders, and the factors involved in how cases are prosecuted or not prosecuted. He will discuss the various types of crimes and how often they are prosecuted. He will discuss the administrative remedies available to commanders, and under which circumstances, and how commanders decide the various options available to them.

5. Mr. Brewer will also testify about the Army regulations regarding uniform

      wear. He will also testify as to the various other times that Army troops are allowed and/or expected to wear their uniforms. It is Mr. Brewer's opinion that troops are virtually never prosecuted for uniform wear violations, since in his years of experience he has rarely seen or heard of anyone prosecuted for uniform wearing violations. Prosecutions for improper uniform wear usually involve false rank or badges or having the wrong uniform items or equipment. This is based on his experience as a JAG, and his knowledge of the military regulations on uniform wear, especially that of the Army. It is his opinion that the Army regulations allow for Reservists and Active Duty Army troops to wear an Army uniform anytime on any U.S. military base, and any time on a Space Available military flight.

6. Mr. Brewer will testify about how weapons are registered on base, and the paperwork forms and expected timelines for doing so. It is his opinion that troops rarely register their weapons immediately upon arriving on base, since they are required to file numerous paper work forms, attend numerous briefings, trainings, meet with their new bosses, new commanders, arrange for personal issues, and the like when PCSing to a new base. It is his opinion that it is not possible for those PCSing to a new base to accomplish all the tasks required of them to be done immediately. He opines that it is thus very common for troops to take several days or weeks to complete all their paperwork and briefings, including the forms for registering weapons on base. He opines that many new troops do not understand the requirements for registering and keeping weapons on base, and they often violate these regulations. He will testify that he has never heard of any troop being prosecuted or disciplined for failing to immediately register his weapons on base. He will testify that it is very common for those living on military bases to have weapons in their housing.

The Defense is aware of its continuing obligations and will disclose any discovery as it becomes available. Please do not hesitate to contact me with any questions.

                                                    Sincerely,

                                              David F. Chalela, Esq.