UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

UNITED STATES OF AMERICA

      V.

SCOTT ALLAN BENNETT,

      DEFENDANT.

CASE NO. 8:11-cr-14-T-33AEP

## DEFENDANT'S MOTION TO VACATE CONVICTION

## DUE TO NEWLY DISCOVERED EVIDENCE

COMES NOW, Scott Bennett, defendant, pro se, and files his Motion to Vacate Conviction Due to Newly Discovered Evidence, pursuant to Rule 33(b)(1), Newly Discovered Evidence; Rule 12(h)(3), Lack of Subject Matter Jurisdiction; Rule 60(b)(3), Fraud, Misrepresentaton, Misconduct on the Court; Chapter 47 of Title 10 (Uniform Code of Military Justice); and 10 USCS§771, for the following reasons:

A.   Facts

1.   On July 22, 2011 defendant was convicted of 18 USC §1001, Making a False Statement to a Government Agency, Count one; 18 USC §702, Wearing a Military Uniform Without Authority, Count two; and 50 USC §797(a)(1), Violation of a Defense Property Security Regulation, Counts three and four.

2.   On December 1, 2011 defendant was sentenced to thirty-six (36) months on all counts to run concurrently. Bennett has been in prison and has not seen any family or friends in 19 months. He is the only child of his mother, who he has not seen in 2 years. He has not been transferred to California to be with his family, as ordered, but has been incarcerated in Pennsylvania.

3.    Following the timely filing of his Direct Appeal, defendant's said Appeal was denied on November 1, 2012.

4.    On November 14, 2012 defendant filed his Petition for Panel Rehearing and Rehearing En Banc to the 11th Circuit Court of Appeals.  The Petition for Panel Rehearing and Rehearing En Banc was denied. (11th Cir. did not see this material before making its decision)

5.    A United States Military Administrative Hearing was convened by the U.S. Army at United States Civil Affairs and Psychological Operations Command at Fort Bragg, North Carolina on November 30, 2012.  The purpose of this military hearing was to examine and determine the facts, issues, circumstances, witnesses, and testimony surrounding Second Lieutenant (hereafter "2LT") Bennett's case, and examine and determine the military jurisdictional challenges filed by 2LT Scott Bennett in his communications with the U.S. Congress, the Department of Defense, and the 11th Circuit Court of Appeals.

6.    2LT Scott Bennett submitted a written statement of facts, including collateral reports to the Department of Defense Inspector General Lynn Halbrooks; General Martin Dempsey, Chairman of the Military Joint Chiefs of Staff; General Ray Odierno, U.S. Army; U.S. House of Representatives, Armed Services Committee, Rep. Duncan Hunter (R-CA), Rep. Howard "Buck" McKeon (R-Ca); U.S. House of Representatives, Intelligence Committee, Rep. Mike Rogers (R-MI); U.S. Senate, Armed Services Committee, Senator Jim Webb(D-VA); U.S. Senate, Intelligence Committee, Senator Diane Feinstein(D-CA) U.S. Senate, Foreign Relations Committee, Senator Bob Corker; U.S. House of Representatives, Government Oversight and Reform Committee, Rep. Jason Chaffetz (R-UT), Rep. Henry Waxman (D-CA);

U.S. House of Representatives, Majority Leader John Boehner; and
other Congressional entities.

    7.    2LT Scott Bennett's military case is currently being
reviewed by General Jeffrey Jacobs, Commander United States Civil
Affairs and Psychological Operations Command, and Congressional
authorities, as well as by the Inspector General Lynne Halbrooks,
U.S. Department of Defense.

B.    <u>Newly Discovered Evidence</u>

    8.    On November 30, 2012, during 2LT Scott Bennett's military
hearing at Fort Bragg, North Carolina, the following issues were
determined:  (a) 2LT Scott Bennett's prosecution by a civilian
Department of Justice prosecutor in a civilian court for actions
2LT Bennett undertook in relation to his military duty is new
and unprecedented and must be examined by the Commander, United
States Army Reserve Command, and the Secretary of the Army for
Constitutional and jurisdictional considerations; (b) 2LT Scott
Bennett's actions <u>did not warrant prosecution by the military</u>
because they did <u>not</u> violate the Uniform Code of Military Justice
(title 10, chapter 47, UCMJ), and therefore 2LT Scott Bennett
would never have been prosecuted criminally in a military court
for any of the allegations made against him; (c) 2LT Scott Bennett
requested, in writing, military defense counsel on February 20,
2011, but was denied said defense counsel because the <u>military</u>
<u>was not prosecuting him</u>; (d) the U.S. military stated it did not
intend to officially participate in the prosecution of 2LT Scott
Bennett, and was not aware that a uniformed Air Force Officer
participated in 2LT Bennett's prosecution by interrogating witnesses
at 2LT Bennett's civilian trial in a civilian court; and (e) an

3

inference that any participation of uniformed Judge Advocate General
(JAG) Officers or military attorneys was not authorized or even
known, as this would have automatically entitled 2LT Scott Bennett
to be represented by military trial defense counsel as it involved
2LT Bennett's duty and rights as a military Officer under Army
regulations and Department of Defense policies. See Exhibit "A".

   9.   The appearance of Timothy Goines in his U.S. Air Force
uniform before the jury, and his direct participation in Bennett's
trial by his interrogation of witnesses, was both unknown and
unauthorized by the U.S. Army (the only military branch lawfully
empowered to prosecute a U.S. Army Officer), and therefore was
a violation of 2LT Scott Bennett's right to military defense counsel,
as he had originally requested and been denied. See Exhibit "B". Furthermore,
and most egregious is the fact that this appearance of Timothy
Goines in U.S. Air Force uniform and his direct examination of
witnesses for the prosecutor, intentionally misinformed and misled
the jury into falsely believing that the U.S. military itself
was prosecuting 2LT Scott Bennett when in fact it was not. This
deception of the jury was an intentional design by Assistant U.S.
Attorney Sara Sweeney meant to poison the jury's mind, cultivate
prejudice against Bennett by arousing people's natural affection
towards the military (and particularly MacDill Air Force Base,
an economic and social necessity of the Tampa, Florida area);
taint the proceedings, obstruct justice, and deceive Judge
Hernandez-Covington and this Honorable Court into allowing a Special
Assistant U.S. Attorney to wear his military uniform--without
authorization--and thereby blind and mislead the jury. Ironically
this outrageous and unethical action by AUSA Sweeney and SAUSA
Goines was precisely what the government was attempting to convict

2LT Scott Bennett with during his lawful military unit transfer and reassignment, and military housing request.

10. Throughout 2LT Bennett's trial on July 18 to July 22, 2011 Timothy Goines (while dressed in full Air Force military uniform) actually conducted direct examination on behalf of the government with numerous witnesses. This activity purposely deceived the jury (and the court) into thinking that the U.S. military and the civilian court were in agreement and acting in tandem to prosecute Bennett, which obviously was false according to the military; as recently learned.

11. This deception by AUSA Sweeney was also practiced upon the original Grand Jury, misleading them into believing that Scott Bennett was not affiliated with the military (despite his being an Active Army Reserve Officer) and that he had therefore no logical reason for living on a military base, when in fact 2LT Scott Bennett's military hearing at U.S. Civil Affairs-Psychological Operations Command, Fort Bragg, N.C., produced newly discovered evidence that proved Bennett had in fact received authorization by his military supervisors both to live on base, and to transfer his military Army Reserve Duty to either U.S. Special Operations Command, U.S. Central Command, or other unit in the McDill Air Force Base/ Tampa area. This intentional misleading of the Grand Jurors into believing that a) Bennett was not affiliated with the military in any way; and b) the military was itself prosecuting Bennett through the appearance and participation of Timothy Goines in his Air Force uniform, caused serious prejudice against Bennett; tainted the jury and outraged them; and resulted in the jury indicting Bennett when they would not have had they known the true facts behind the situation, that: a) Bennett was in fact an Active Army Reserve Officer (non-active duty); and b) Timothy Goines was not allowed

to wear his uniform and interrogate witnesses; c) that LTC. Joel Droba was <u>not</u>
2LT Bennett's Commanding Officer at the time, LTC. Joyce Busch was (Exhibit E) ; and that
AUSA Sweeney misled the jury into incorrectly thinking LTC. Joel Droba was managing
2LT Bennett's transfer when in fact he was <u>not</u>; and d) LTC. Joel Droba was not
authorized to wear his military uniform during his testimony at trial, because
<u>the military was not prosecuting</u> 2LT Bennett and LTC. Joel Droba's wearing of
the uniform impermissibly communicated to the jury a joint prosecution was  occurring
against Bennett, when it was not.  AUSA Sweeney intentionally instructed LTC.
Droba to wear his uniform, which is a <u>violation of 18 USC §1385</u> (Posse Comitatus)
and the same 18 USCS §702 (unauthorized military uniform wear) charge against
Bennett, since the Department of Justice is <u>not authorized by the Constitution</u>
<u>or Congress or the President to authorize</u>  when military members may wear uniforms.
The findings of the U.S. Military Investigation on November 30, 2012 at Fort
Bragg indicate the U.S. military was itself <u>not</u> prosecuting Bennett for <u>any</u>
violations of Army Regulations, Department of Defense policies, or other federal laws,
and the Grand Jury and the Trial Jury, as well as the Judge and Court, were deceived
into thinking it was.  This was an obstruction of justice, and demands investigation.

12.    This newly discovered evidence, which came to life long after the July
2011 trial (specifically during the November 30, 2012 military hearing) raises
substantive, serious, and compelling facts which had the Court known, would have
changed the outcome, particularly resulting in an acquittal for 2LT Bennett.
Alternatively this information substantially prejudiced Bennett's right to a fair trial
within the meaning of the 5th and 6th Amendment of the U.S. Constitution which factual
information, uncorrected, and unnoticed by Bennett or the Court, caused the jury to
wrongfully convict Bennett in violation of the U.S. Constitution. See Exhibit "C".

WHEREFORE, it is respectfully requested that defendant's Motion to Vacate the
Conviction due to Newly Discovered Evidence be granted.

ARGUMENT

C.   Newly Discovered Evidence Rule 33(b)(1), 12(h)(3)

Defendant's main contention in this regard is that during the very case
where he has been criminally prosecuted for wearing his military uniform without
authority, one of the very prosecutors in this case brazenly wore his military
uniform, and unlawfully instructed LTC. Joel Droba (a reservist) to wear his for
the purpose of giving the trial the distorted image of being a joint military
prosecution (which the military has since denied).  Timothy Goines  paraded around
the court in front of her Honor, arrogantly displaying--and abusing--his military
uniform (while prosecuting Bennett for wearing his) without any authorization, and
consequently duped this court and the jury. AUSA Sweeney's instruction to LTC.
Joel Droba to wear his uniform reinforced this deception, and violated the law on
multiple levels.  The defendant learned well after trial that indeed Timothy Goines
(and LTC. Joel Droba) did not have authorization to wear the military uniform while
participating in Bennett's trial, for this would have compelled the military to
provide Bennett with military appointed Trial Defense Counsel as he had originally
requested and been denied.  See exhibit "A".The wearing of the military uniform by
Goines and Droba was designed for the purpose of impermissibly deceiving the jury and
leading them into believing that the military and the civilian court were working
against Bennett in a joint prosecution.  This was never the case, and in fact would
by its very nature have been unconstitutional.

In order for Droba, a Reservist, and Timothy Goines to appear in the District
Court in Tampa Florida, one testifying in his uniform and one prosecuting in his
uniform, would have required the Honorable Judge Hernandez-Covington to authorize
such military attire.  Clearly this court did not authorize either of those trial
participants to engage in such impermissible and brazen actions to directly mislead
the jury, and unconstitutionally mislead the jury, that their attire was  approved
by the military or by the court.  In fact the record is silent from this court
on the subject.  The fact is this court did not authorize such deceptive actions
by the government. Wasn't 2LT Scott Bennett a Reservist as well?

7

The 5th and 6th Amendment were written to protect the individual's rights and to prevent the destruction of a person's life by preventing unjustified, deceptive, and unconstitutional accusations and convictions against the individual.  See U.S. Constitution's 5th and 6th Amendments.  The arrogance and offensive posture by the prosecutors in this case cannot be justified or condoned and defendant therefore asks the court to hear this matter, receive additional evidence as permitted by the Federal Rules, or at very least vacate the conviction and grant a new trial.

D.    Rule 60(b)(3), Fraud, Misrepresentation, and Misconduct on the Court

It cannot be overstated just how wrong the government's conduct was in this case under the circumstances.  Here Bennett was being tried for wearing his military uniform without authority, inter alia. He was indeed dissuaded from wearing his uniform during the trial, and made to seem as if he was some "Kook" masquerading as a military Officer (Bennett's military record is exemplary. See exhibit "D").

Meanwhile it was the government's attorneys, particularly Timothy Goines, who without this Court's authority or directives, or any military authority, dawned an Air Force uniform, paraded himself in front of the court and in front of the jury, and tacitly led the jury to believe he had military and civilian court authority to be dressed as he was, and further to deceive the jury, under circumstances which reflect obstruction of justice, into believing that the military and the civilian courts were in tandem in the prosecution against defendant Bennett.  This court, the military, and U.S. Congress should be offended at the government's brazen scheme and diabolical behavior in front of the jury, which substantially caused defendant's conviction. For such similar outrageous behavior the Attorney General Eric Holder threw out the conviction of Senator Ted Stevens (R-Alaska).

This newly discovered evidence, from the military standpoint reflecting that Timothy Goines had no authorization to wear his military uniform to sway the jury against Bennett, is of the type that has caused Courts to admonish the government for misconduct and reverse a conviction even at the hand of the U.S. Attorney General himself.  See U.S. v. Senator Theodore Stevens, No. 08-231 (D.C. C 2009) and U.S. v. Valez, 586 F.3d 875 (11th Cir. 2009).

In fact rule 33, newly discovered evidence, permits a new trial where the rule reflects as follows:

> Any motion for a new trial grounded on
> newly discovered evidence must be filed
> within 3 years after the verdict or finding
> of guilty.

In fact, rule 33(a) clearly permits new trial for newly discovered evidence as follows:

> (a) Defendant's Motion.  Upon defendant's motion the
> court may vacate any judgment and grant a new trial
> if the interests of justice so requires.

Clearly this information presented herein is newly discovered evidence and this motion is being brought to the court within three (3) years after the verdict of guilty in Bennett's case.  It is axiomatic that a defendant who has been convicted based on improper conduct by the government, such as misleading the jury that the military was in support of the prosecution against Bennett when it was not, is such a case which requires the court to take further evidence and hearing and ultimately vacate the conviction against defendant Bennett.  See U.S. v. Reyes, 49 F.3d 63, 66 (2d Cir. 1995), and Herrera v. Collins, 506 U.S. 390, 410-412 (1993).

9

See <u>U.S. v. Theodore Stevens</u>, <u>supra</u>, <u>U.S. v. Quinn</u>, 537 F. Supp. 2d 99, 108 (D.D.C. 2008), <u>U.S. v. Cunningham</u>, 145 F.3d 1385 (D.C. Cir. 1998), and <u>U.S. v. Pollack,</u> 534 F.2d 964, 973 (D.C. Cir. 1973).

Accordingly it is only fair, under the circumstances of the improper conduct of the government's attorneys in this case that the motion to vacate defendant Bennett's conviction for newly discovered evidence be granted.

E.    Title 10, Chapter 47 of the Uniform Code of Military Justice and 10 USCS §771

It is well known between the separation of military jurisdiction and civilian jurisdiction pursuant to 18 USCS §3261, Military Extraterritorial Jurisdiction, that "(d) No prosecution may be commenced against <u>a member of the Armed Forces</u> subject to chapter 47 of title 10 [10 USCS§§ 801 et seq.] (the Uniform Code of Military Justice)." The facts in this case reflect that Bennett was an Army Reservist, whose commission as an Officer was <u>ongoing</u>, meaning that he stood ready at all times to defend America and its citizens. How is it possible that while in such military good standing Bennett could be subjected to and indeed convicted for wearing his military uniform while <u>transitioning</u> from Washington DC to Tampa, Florida to further his <u>military</u> objectives, on behalf of our great nation?

In this regard and under these circumstances the prosecution cannot be justified. See 10 USCS §§ 771, 772.

The question that must be asked at this point is who authorized Timothy Goines to wear his military uniform while prosecuting Bennett in front of the jury. The military did not (See 10 USCS§771, <u>id.</u>). Clearly this honorable court <u>could not</u> (See Article 1, Section 8, U.S. Constitution). See Exhibit "F".

10

If Timothy Goines was allowed to wear his uniform in this trial, then certainly Bennett should have been allowed to wear his. However under the circumstances of the peculiar prosecution alleging Bennett had no authority to wear his uniform during period of time when he was clearly a reservist performing actions relating to his reserve military duty, then there is no circumstances which could have justified prosecutor Goines parading in front of the jury wearing a military uniform, in a civilian trial by jury. See 18 USCS § 702. Cf. Schact v. United States (1970) 398 US 58, 26 L.Ed 2d 44, 90 S Ct 1555. The expression "What is good for the goose is good for the gander", needs to be honored in this case, since the opposite resulted in devastating consequences for defendant Bennett. See 10 USCS § 772, inter alia.

Accordingly defendant Bennett urges this court to vacate the conviction in this case.

F.  Rule 12(h)(3), Lack of Subject
    Matter Jurisdiction

Defendant has always maintained that this court lacked jurisdiction over this matter since a substantial and indeed dominant factual development and chronology of this matter reflects that defendant was charged with wearing his military uniform without authority in a military environment, possessing firearms many of them seized from his residence on the military base, and misrepresenting facts to gain military residence before military personnel on a military base. The bogus stop regarding a frivolous DUI inquiry was dismissed out of hand. Under these circumstances this was a military matter requiring a military tribunal. When the military considered the facts and issues in this conviction, the military concluded it would not have prosecuted Bennett with respect to the substance

11

of the convictions.   Clearly this was a <u>military matter involving</u>
<u>a military Officer performing military related duties</u> (in support
of the U.S. Constitution and in accordance with his military oath)
thereby warranting,and indeed requiring,<u>military jurisdiction.</u>
See U.S. Constitution 5th Amendment, which indeed was violated
where it states "No person shall be held to answer for a capital
or otherwise infamous crime unless on a presentment or indictment
of a grand jury <u>except</u> in cases arising in the <u>land</u> or naval forces
or in the <u>Militia</u>, when in actual service in time of war or public
danger;"... This passage in the 5th Amendment has been interpreted
consistently by the U.S. Supreme Court and indeed by the various
Circuits as providing the <u>separation</u> between the military courts
and the civilian U.S. District Courts.   See 10 USCS §§771, 772.

     Regarding the wearing of the U.S. military uniform, the law
is absolutely clear when it states, "...no person <u>except a member</u>
of the Army, Navy, Air Force, or Marine Corps, as the case may
be, may wear-- (1) the uniform, or a distinctive part of the uniform,
of the Army, Navy, Air force, or Marine Corps;"  See 10 USCS §771.

     Bennett was in fact a <u>member</u> of said Army.  He was a Second
Lieutenant Officer whose commission was ongoing (meaning it did
not end), 24 hours a day, 7 days a week, 365 days per year, until
he retired from active service.  Therefore Bennett did in fact
have <u>authority</u> according to law by virtue of his <u>active membership</u>
<u>and ongoing Officer commission</u> with the U.S. Army, and thus he
was <u>never</u> in violation of the 18 § 702 statute.

     The United States Supreme Court in fact confirms the purpose
of this law and the spirit and intent of Congress behind it  was
<u>not</u> to prosecute an active Army Reserve Officer (not retired)
with an active (ongoing) membership in the military, but rather

12

was to prosecute civilians with no official membership in the
military who were "dressing-up" in uniforms they had no authority
to wear, and whose intentions or aims were to damage the United
States or its military. Thus the Supreme Court affirms Bennett's
status as a member of the military, his duty and right to wear
the uniform as a member, and affirms his defense of not violating
18 USCS § 702 by virtue of 10 USCS §§771, 772. See also Schacht
v. United States, supra.

G. Posse Comitatus Impact on Jurisdiction

The military hearing on November 30, 2012 at Fort Bragg, N.C.
revealed newly discovered evidence that indicated when Scott Bennett
was stopped at the front gate of McDill Air Force Base on April
23, 2010, he was in fact in civilian status at the time, and therefore
not subject to the exercise of military power or jurisdiction
for detainment, arrest, or interrogation. Additionally the military
confirmed that no "driving under the influence" investigation
power existed for military security forces over civilians off-
base. Furthermore it was concluded that the area Bennett was
stopped was technically "off-base" in proprietary jurisdiction, and
therefore only the State of Florida had police arrest powers over
civilians, not the military. Thus the search, seizure, arrest
and other similar activity taken by military security forces against
Bennett was a violation of 18 USC§1385 (Posse Comitatus) and 10
USC §375, since MacDill Air Force Base Security Forces ensured
that Mr. Bennett was not free to leave by removing him from his
car and holding him for 45 minutes because they believed he had
committed a D.U.I. and was in violation of Florida's state law
(the military investigation revealed the D.U.I. never occurred).

The United States Air Force's own commander and the military
law manual instructs Air Force personnel that they are prohibited
from the very actions that were taken against Bennett during the
early, and later, hours of April 23.  It states:

> Whoever, except in cases and under circumstances
> expressly authorized by the Constitution or
> Act of Congress, willfully uses any part of
> the Army or the Air Force as a posse comitatus
> or otherwise to execute the laws shall be fined
> under this title or imprisoned not more than
> two years, or both.
> *PUNISHMENT FOR VIOLATIONS:  Suppression of
> evidence illegally obtained; the court may
> let the accused go free.
> *WHAT POSSE COMITATUS PROHIBITS:  Prohibitions.
> The armed services are precluded from assisting
> local law enforcement officials in enforcing
> civilian laws, except where authorized by the
> Constitution or act of Congress; by its terms,
> the Act applies only to the Army and Air Force;
> The military is still prohibited from enforcing
> civilian laws.  We may not participate in a
> search, seizure, arrest, or similar activity
> in support of local law enforcement (§375).
> Even on the installation, we "detain" civilians
> before turning them over to civil authorities.
> *We do not arrest or apprehend civilians.  This
> is a critical distinction. pp. 393-5.

The arrest and detainment of Bennett for 45 minutes on April
23, 2010 outside the base, on proprietary jurisdiction, off-base,
when he was in civilian status (not in Army uniform) was a violation
of 18 USC §1385 (posse comitatus) and 10 USC §375.  These statutes
were violated a second time when Bennett returned to base, and
again was arrested, removed from his car (at gunpoint), escorted
against his will onto MacDill AFB, detained, and interrogated for
over twelve (12) hours by military security forces under conditions
which resulted in medical damage to Bennett, and that many advocacy
groups would affirm as torture.  These statutes were violated a
third time when Timothy Goines, under the instruction of AUSA Sara
Sweeney, dressed-up in his Air Force uniform to participate in
Bennett's trial and thereby mislead the jury, judge, and court

into believing that the military was prosecuting Bennett, when in reality it was not. See Exhibit "E".

H.   11th Circuit Appeals Court Precedents

In United States v. Hartley, 678 F.2d 961, 978 n. 24 (11th Cir. 1982) the 11th Circuit Appeals Court established three different tests that had been articulated in the Eighth Circuit and cited by the district court in Hartley: "(1) whether civilian law enforcement officials had made 'direct active use' of the military to 'execute the laws'; (2) whether the use of the military 'pervaded the activities' of the civilian officials; or  3) whether the military was used so as to subject 'citizens to the exercise of military power which was regulatory, proscriptive, or compulsory.'"  See Hartley, 678 F. 2d at 978 n. 24; see United States v. McArthur, 419 F. Supp. 186 (D.N.D.) (setting out three different tests),aff'd sub nom. United States v. Casper, 541 F.2d 1275 (8th Cir. 1976).

In United States v. Bacon, 851 F.2d 1312 (11th Cir. 1988) the 11th Circuit stated that military participation could not pervade the activities of the civilian officials, or "subject the citizenry to the regulatory exercise of military power." Id. at 1314. The court established that "a willful use of a military person to make an arrest would be a violation of the Act under the plain words of the statute (as making an arrest would seem to be a quintessential execution of the law)." See Riley v. Newton 94 F.3d 632 (11th Cir. 1996).  In Bissonette v. Haig, 776 F.2d 1384, 1390 (8th Cir. 1985) the Eighth Circuit indicated that military involvement does not constitute a violation of the Act "unless it actually regulates, forbids, or compels some conduct on the part of those claiming relief."

The military investigation conducted on November 30, 2012 revealed newly discovered evidence indicating Bennett had in fact been

stopped, arrested, removed from his car at gunpoint by security forces, detained, and interrogated against his will, despite the fact that Bennett was in civilian status at the time, and was marked as a "civilian" in the security forces log book.  See Exhibit

According to the precedent rulings of the 11th and 8th Circuit Courts, as well as military regulations and directives, these actions taken against Bennett were "compulsory", "pervaded civilian law enforcement", and "were a direct use of military forces" against a civilian.  Thus these actions violated 18 USC §1385 (Posse Comitatus), 10 USC §375, and Bennett's Constitutional rights against search and seizure.

It is essential to note that the government has conceded that Bennett was in fact located in the proprietary jurisdiction area of the map, which means he was technically "off-base" and outside the jurisdiction of military security forces from "arresting or detaining" him.  Security forces could only "deny access" to enter the base, not arrest. This immediately calls for 11th Circuit's prior views and precedent to be applied, which states:

> "...if defendant stayed wholly within the proprietary jurisdiction of the base, the Court never had jurisdiction over the Defendant's case...the issue for the court's determination is where defendant operated his vehicle in relation to the line between the base's proprietary jurisdiction and its exclusive jurisdiction (the jurisdictional line).  If the Defendant crossed the jurisdictional line, the court has subject-matter jurisdiction.  If he did not, the Court lacks such jurisdiction." [See page 19 on 'Defendant's Motion to Supress', citing U.S. District Court, N.D. Florida, Pensacola Division, United States v. Donald Gene English]

Because military security forces defined their detainment of Bennett as "investigation into a suspected D.U.I.", and because they were doing so when Bennett was off-base in proprietary jurisdiction,

16

they were illegally assuming civilian police powers, violating
Posse Comitatus, violating Bennett's Civil Rights, and ultimately
performing an illegal citizen's arrest since the D.U.I. charge was
unjustified and later dismissed altogether by the State of Florida.
Thus the law, case precedent, and this Honorable Court's natural
disposition towards preserving Constitutional liberties from
government subversion justifies its vacation of judgment and
dismissal based on newly discovered evidence which establishes
Bennett being located off-base and outside the geographically and
Constitutionally defined reach and jurisdiction of military
security forces' ability to "arrest and detain" a civilian for
suspicion of D.U.I.

I.    Constitutional Violations of
Military-Civilian Jurisdiction

The military hearing of November 30, 2012 established that
the "housing" and "transfer of firearms" issues occurred on a military
base and pursuant to military protocols the matter could and should
have been resolved via military agency or tribunal decision, not
the civil U.S. District Court system.  The Constitution outlines
the "rules and management" of the Armed Forces and its personnel
as being under military court jurisdiction, not civil court jurisdiction.
It is clear from the record that Bennett was in the process of
transferring his military drill from his home Army Reserve Unit,
the 11th Psychological Operations Battalion, down to Tampa, Florida,
and had been attempting to relocate his military drill to CENTCOM
to coincide with his assignment there as a Terrorism Threat Finance
Analyst with a Top Secret/ Secret Compartmentalized Information
security clearance at the Joint Interagency Operations Center,
U.S. Central Command.  Electronic communications prove this.

17

Bennett had worn his uniform, traveled on military aircraft, and applied for military temporary housing in his capacity as an Army Reserve Officer relocating and not as a civilian contractor. Newly discovered evidence and statements  from Bennett's superior officers Major James Simpson and Captain Chris Jenkins confirm this.

Since 2LT Bennett's transfer of drill assignment down to Florida was a military matter relating to his ongoing duty as an Army Reserve Officer transferring to a new location, it fell under military jurisdiction, not civilian. The forms, processes, timelines, and other practices employed by the military to its personnel are Constitutionally governed by military courts and agencies and commanders, and not by civilian courts. Additionally the expert witness who testified at trial, and who the court recognized as an expert in military protocol, stated that Bennett was in accordance with Army Regulations and law when he (a) wore his uniform and traveled on military aircraft from Washington DC to Florida for the purpose of seeking a location to transfer his drill assignment to; (b) stayed in Officer Base Housing Quarters; (c) completed a military base housing application with the terms "ONGOING" for 'Time Remaining On Active Duty', "CENTCOM" as his 'Incoming Unit', and circling "YES" under "Remote Tour" when it was conceived to mean relocating to an area distant and apart from the "home unit", in this case from the 11th Psychological Operations Battalion in Washington DC down to Tampa, Florida. See Exhibit "G".

As a military matter under military jurisdiction, a "military court of inquiry" should have been convened to investigate the matter to determine whether further procedures were warranted. See 10 USCA §935. No military court of inquiry was ever convened, and the Justice Department's assumption of jurisdiction of the case was both procedurally inappropriate and a violation of 2LT Bennett's rights as a soldier protected under Article 1, section 8. This unconstitutional assumption of jurisdiction by the Justice Department was also a violation of the Military Justice Act of 1968 (10 USCA §§859-876) which reviews such matters through a Court of Military Review.

The peculiar nature of military custom, regulations, and practices differ from civilian ones, and must be reviewed outside a civilian body, in order to preserve military integrity. This is cited in Altmayer v. Sanford, 148 F.2d 161, 162 (5th Cir. 1945) when it states, "Courts-martial are not a part of the federal judicial system, and the procedure in such courts is regulated by the Articles of War, Army Regulations, orders of the President, and military custom." The key words here are "Army Regulations and military custom" for establishing the judicial standard by which a soldier must be judged for military related matters.

Indeed the U.S. Constitution itself clearly states this:

> ARTICLE 1, Section 8:  The Congress shall have power to...raise and support Armies...to make rules for the Government and Regulation of the land and naval forces...to provide for organizing, arming, and disciplining, the Militia, and for governing such part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress;

19

Therefore according to the U.S. Constitution and various federal laws, Army Regulations, Department of Defense policies, directives and customs, as well as the Rules of Criminal Procedure, a 12(b) Challenge to Jurisdiction is warranted since 2LT Scott Bennett's "Housing" and "Firearms Transfer by moving truck onto base" should have fallen under <u>military</u> jurisdiction, and Bennett would be provided with <u>military</u> defense counsel in the event charges were filed.  However the military investigation on November 30, 2012 at Fort Bragg, N.C. determined <u>no charges were brought</u> against Bennett, and the military <u>did not authorize</u> any prosecution against Bennett, or sanction military uniforms to have been used by AUSA Sweeney in her <u>strategy to distort</u> jurisdictional lines, mislead the jury, and commit a serious fraud on the court and miscarriage of justice. By unlawfully convicting Bennett of actions he was legally entitled to do as a "military member" and <u>in relation to his military status</u>, this case, if allowed to stand, violates the Constitution by <u>surrending military jurisdiction over military members for performing their military duty over to the Department of Justice civilian attorneys</u>; and also establishes a new precedent where military police can arrest, detain, and interrogate <u>civilians</u> whenever they approach and stop in front of a military base--be it <u>10 feet or 10 miles</u> in front of the base gate.  If not reversed, this case can only harm and obliterate the core freedoms of the United States, which are: <u>The separate jurisdiction and civilian control over the military; and the inviolable personal liberty of the American citizen from unlawful arrest, interrogation, torture, and confinement by military police.</u> See <u>People v. Burden</u> (1979) 94 Mich App 209, 288 NW2d 392 ("...his status as a military man").

J.    Fraud on the Court

     According to Black's Law Dictionary and Civil and Criminal
Rules of Procedure, "Fraud on the Court" in a judicial proceeding
is a lawyer's or party's misconduct so serious that it undermines
or is intended to undermine the integrity of the proceeding.  Examples
are introduction of fabricated evidence.  "Fraudulent concealment"
is the affirmative suppression or hiding, with the <u>intent to deceive</u>
or defraud, of a material fact or circumstance that one is legally
(or sometimes morally) bound to reveal.  "Active concealment" is
the concealment by words or acts of something that one has a duty
to reveal.  When initiated out of "vindictive prosecution" and
a compulsion to subvert jurisdiction in order to consolidate authority
and power, this behavior becomes not only unconstitutional but
<u>a dangerous threat to America's freedom itself.</u>  In fact all law
abiding, peaceful, and freedom loving Americans--both military
members and civilians--will be irreparably harmed if the subversive
and illegal antics of AUSA Sweeney and Timothy Goines are allowed
to stand as a <u>precedent of law.</u>

     By illegally assuming jurisdiction over this case, and
prosecuting it in a civilian court when the military refused to,
AUSA Sweeney <u>damages the military and the rights of service members.</u>

     By instructing Timothy Goines to wear his Air Force uniform
and prosecute witnesses, AUSA Sweeney misled both the Grand Jury
and the Trial Jury by <u>impermissibly</u> suggesting a joint military-
civilian prosecution against Bennett, which the military investigation
has established as false.  This <u>charade deceived the jury and created</u>
<u>serious prejudice</u> against Bennett through the false notion the
military were prosecuting him, when they were not.

                                 21

And by fraudulently and shamelessly inducing LTC. Joel Droba
into wearing his uniform at trial (despite him also being an Army
Reservist like 2LT Bennett and therefore a <u>civilian</u> at the time
and thus also theoretically in violation of the Justice Department's
interpretation of 18 USC§702 since the Justice Department <u>cannot</u>
<u>authorize military</u> members to wear their uniforms in a civilian
court) AUSA Sara Sweeney and Timothy Goines intentionally deceived
and manipulated the jury and judge into believing a joint military-
civilian prosecution in a civilian court for a military issue had
somehow, someway been pre-arranged and authorized.  This resulted
in prejudicial error against Bennett by the jury, since they wrongly
believed he was being prosecuted by the military, as represented
by Timothy Goines in Air Force uniform and LTC. Droba in Army uniform
for violating military law or regulations.  The military investigation
however revealed Bennett had not, and no military prosecution was
authorized or known about.

> "Undue Prejudice" is defined by Black's Law as:
>> the harm resulting from a <u>fact trier's</u> being exposed
>> to evidence that is persuasive but inadmissible or
>> that so <u>arouses the emotions</u> that calm and logical
>> reasoning is abandoned. 2. A preconceived judgment
>> formed with little or no factual basis; a strong
>> <u>bias</u>.  Prejudicial error is <u>reversible error.</u>

Clearly in a time of war, a jury is going to be influenced by
the very presence of a military Officer prosecuting a person <u>not</u>
in uniform and assume the military is officially prosecuting this
person.  This error is compounded when another Reservist dawns
his uniform for the same purpose, although without military authorization.
This prejudicial effect <u>cannot be overcome by jury instruction</u>
and the <u>fact trier is torn</u> between the emotional loyalty  they naturally
have towards the military defending them and that appear in front
of them (Timothy Goines), or betraying through abandoning their support for <u>their</u>
military. This then becomes "<u>cumulative error</u>" and overwhelming to the jury.

"Manifest Constitutional Error" is defined as:
an error that has an identifiably negative impact
on the trial to such a degree that the <u>constitutional
rights of a party are compromised</u>.  A manifest
constitutional error can be reviewed by a court of
appeals <u>even if the appellant did not object at trial.</u>

In this case, newly discovered evidence derived from the
military investigation and hearing at Fort Bragg indicated Bennett's
constitutional rights as both a military member and as a private
citizen were compromised, if not contemptuously violated.  This
is a reversible error because the party's substantive rights and
the case's outcome "were affected" with bias, prejudice, and acts
of fraud on the court.

Indeed this case was not only a corruption of the Constitution,
but a reprehensible perversion of law and miscarriage of justice.
2LT Scott Bennett prays this Honorable Court grants him relief
by correcting this error and vacating the judgment against him.
The very integrity and good faith of the United States military
and the civilian court system are at stake, and the Constitution
requires it.

K.    Office for Professional Responsibility Considerations

The cumulative impact and presentation in this case reflecting prosecutorial misconduct and deceptive behavior by both the principal government attorney, Ms. Sweeney, coupled with the improprieties of Timothy Goines, are so extensive that defendant Scott Bennett is left no alternative but to direct this motion to the Office of Professional Responsibilities and request hereby a full investigation.

Reaching back to a time of Justice Brandeis and fast forward to the present time of the U.S. Attorney General Eric Holder, both offices of high requirements of justice have consistently demanded that the U.S. Attorneys and particularly the Assistant U.S. Attorneys comport themselves in the highest order when prosecuting individuals, since their purpose is to fairly and constitutionally bring offenders to justice as opposed to convicting an innocent individual by all means necessary.  For all the reasons expressed above, which need not be rehashed here again in this section, reflecting the prosecutor's abandonment of the constitutional requirements  for fair trial and the ethical requirements  mandated in all U.S. Courts, it is axiomatic that the Office for Professional Responsibility is required to investigate these prosecutors and sanction them accordingly following the investigation, as in the case of U.S. v. Senator Theodore Stevens, id. in order to maintain decency, accountability, and fairness due the citizens of the United States of America.

## CONCLUSION

Because the government substantially violated defendant Scott Bennett's right to a fair trial consistent with the United States Constitution  and because by their deviation from the Constitutional mandates, and particularly their deviation from the separation between civilian prosecution and military prosecution, intentionally

24

misleading the jury as they did, and improperly causing the jury to convict defendant Bennett, as thoroughly briefed above, defendant respectfully requests that this honorable court grants defendant's motion to vacate the conviction due to newly discovered evidence, inter alia.

Respectfully submitted,

Scott Bennett, defendant, pro se
2LT United States Army Reserve
11th Psychological Operations Battalion
2nd Psychological Operations Group

Address: #29418-016
FCI Schuylkill, Camp 2
P.O. Box 670
Minersville, PA 17954-0670
(570) 544-7100


CERTIFICATE OF SERVICE

I hereby certify that a copy of defendant's Motion to Vacate Conviction Due to Newly Discovered Evidence, was mailed postage pre-paid to AUSA Sara Sweeney, 400 North Tampa Street, Suite 3200, Tampa, Florida 33602, and Timothy Goines at this same address, on this __10__ day of _February_, 2013.

Scott Bennett

cc: Captain Avi Stone, Trial Defense Services, U.S. Army;
General Jeffrey Jacobs, Commander, U.S. Army Civil Affairs
and Psychological Operations Command;
General Martin Dempsey, Chairman, Joint Chiefs of Staff
General Ray Odierno, Commander, U.S. Army
U.S. House of Representatives, Armed Services Committee
U.S. Senate, Armed Services Committee
U.S. Senate Judiciary Committee
U.S. House of Representatives, Intelligence Committee
U.S. House Committee on Government Oversight and Reform
Inspector General Lynne Halbrooks, U.S. Department of Defense
Leon Panetta, U.S. Secretary of Defense
General Mark A. Welsh III, Air Force Chief of Staff
Senator John McCain; Senator Carl Levin; Senator Charles Grassly;
Senator Diane Feinstein; Representative Jason Chaffetz;
Representative Duncan Hunter; Rep. Howard McKeon; Rep. Mike Rogers;

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

UNITED STATES OF AMERICA

V.

SCOTT ALLAN BENNETT,

DEFENDANT.

CASE NO. 8:11-cr-14-T-33AEP

ORDER

UPON CONSIDERATION, of Defendant's Motion to Vacate Conviction Due To Newly Discovered Evidence, opposition thereto, and it appearing to the Court that good cause is shown  why  the motion should be granted, it is on this _____ day of _____, 2013,

ORDERED, that Defendant's Motion to Vacate Conviction Due to Newly Discovered Evidence, is GRANTED.

_____

U.S. DISTRICT COURT JUDGE

cc: Scott Bennett, defendant, pro se

AUSA Sara Sweeney

## EXHIBIT "A"

Document is a record of the United States Military
Administrative Hearing that was convened on
November 30, 2012 by the U.S. Army Civil Affairs-
Psychological Operations Command, at Fort Bragg, North
Carolina.

The purpose of this hearing was to examine and determine
all the facts, issues, circumstances, witnesses, testimony,
and any other material relevant as to why 2LT Bennett's
Commission in the U.S. Army should be preserved and defended
against allegations made in 2LT Bennett's criminal charges
brought by the Department of Justice in a Civilian Court
for military related offenses.

The matter is being referred to higher military authority
within the Department of Defense at the Pentagon, Washington
DC.

## EXHIBIT "A"



**DEPARTMENT OF THE ARMY**
16th LEGAL OPERATIONS DETACHMENT (LOD)(TDS)
212 GENERAL LEE AVENUE
FORT HAMILTON, NY 11252



REPLY TO
ATTENTION OF

AFRC-RRC-LAL                                          8 November 2012

MEMORANDUM THRU CPT Daren M. Jaques, Recorder, USACAPOC (Airborne)

FOR COL Robert Yates, President of the Board

SUBJECT: Request to have the Respondent, 2LT Scott Bennett, personally appear at his hearing scheduled for 30 November 2012

1. 2LT Bennett is currently incarcerated the Federal Prison Camp in Schuylkill, PA.

2. Pursuant to AR 135-175 paragraph 2-17(a) 2LT Bennett has the right to personally appear before the board officers to present his case.

3. AR 135-175 paragraph 2-17(b) addresses those situations when an officer is unable to attend because of his incarceration by civilian authorities. However, despite the fact that 2LT Bennett is incarcerated, this might not prevent his personal appearance, and every effort should be made to secure his presence before the Board of Officers.

4. To that end, we respectfully request that the Board President send via facsimile a letter to the warden, thru Mr. Samuel Kranzel, 2LT Bennett's counselor, requesting that 2LT Bennett be given a 3 day pass to appear in front of the Board of Officers, or allowed to be escorted by MPs to attend and that the command provide said MPs. The fax number is 570-544-7296 and 2LT Bennett's register number is 29418-016. The address is FCI Schuylkill, Federal Correctional Institution, PO Box 759, Minersville, PA 17954.

5. If these efforts are unsuccessful, then we respectfully request, in the alternative, that 2LT Bennett be allowed to attend via video conferencing.

6. Finally, as a last option, we would respectfully request that he attend via telephonic conferencing.

/s/
AVIE R. STONE
CPT, JA, USAR
Defense Counsel

## EXHIBIT A

Record of U.S. Military hearing convened by USACAPOC to examine and determine the facts, issues, circumstances, witnesses surrounding 2LT Bennett's case: 8:11-CR-14-T-33AEP.  Newly Discovered Evidence.

EXHIBIT "A" : Military hearing-investigation

## EXHIBIT "A"--PART 2

### DEPARTMENT OF THE ARMY
#### HEADQUARTERS, UNITED STATES ARMY
#### CIVIL AFFAIRS AND PSYCHOLOGICAL OPERATIONS COMMAND (AIRBORNE)
#### FORT BRAGG, NORTH CAROLINA 28310-5200



AFRC-CPC-JA                                     12 December 2012

MEMORANDUM FOR 2LT Scott A. Bennett, 11th Psychological
Operations Battalion, 5550 Dower House Road, Upper Marlboro, MD
20772

SUBJECT:  Officer Board of Inquiry

1.  I hereby furnish to you a copy of the Board of Inquiry
report. You are to sign the enclosed acknowledgement and return
it to the point of contact identified in paragraph 4 below.

2.  You now have the following rights pursuant to DoD
Instruction 1332.30, para 2-16e(2):

     a.  You may tender your resignation in lieu of elimination
IAW AR 135-175, para 2-16e(2);

     b.  You may request discharge in lieu of eliminating IAW
para DoDI 1332.30, Enclosed 4, para 4b and 5a(3); or

     c.  You may apply for transfer to the Retired Reserve
inlieu of elimination if otherwise eligible as stated in DoDI
1332.30, Enclosure 4, para 4a and 5a(2). If you elect this
option the voluntary transfer to the Retired Reserve application
will be amended to specifically state that the application is
submitted in lieu of elimination.

3.  In addition to the rights listed above, I further advise you
that:

     a.  You may submit an appellate brief and statement within 7
calendar days after receipt of the Board of Inquiry report.
Submit any brief or statement to the point of contact identified
in paragraph 5 below.

     b.  The entire case will be reviewed by the Commander,
United States Army Reserve Command. If the Commander, U.S. Army
Reserve Command, determines that you should not be retained,
your case will be referred to the Secretary of the Army or his
designee for final action.

exhibit "A"--PART 2

## EXHIBIT "A"--PART 3

Summary of Proceedings
in the Involuntary Separation of
2LT Scott A. Bennett

The Board was appointed by Memorandum of Appointment, Headquarters, United States Army Civil Affairs and Psychological Operations Command (Airborne), Fort Bragg, North Carolina 28310, dated 17 May 2012, a copy of which is attached as Enclosure I.

The Respondent was referred to this board for a hearing by Memorandum of Referral, Headquarters, United States Army Civil Affairs and Psychological Operations Command (Airborne), Fort Bragg, North Carolina 28310, dated 26 June 2012, a copy of which is attached as Enclosure II.

The Board convened at Fort Bragg, North Carolina, pursuant to the foregoing Notification to Appear before an Administrative Separation Board, at 0900 hours on 30 November 2012.  The Memorandum notifying the Respondent of the Board is attached as Enclosure III.

Persons Present:
Board President: COL Robert Yates
Board Member: LTC James Bernard
Board Member: LTC Darryl Butler
Recorder: CPT Daren Jaques
Asst Recorder: 1LT Gavin Routt
Respondent: 2LT Scott A. Bennett (appeared by telephone)
Legal Advisor: COL Alex Taylor
Respondent's Counsel: CPT Avie Stone
Reporter: PFC D'Arcy Williams

Persons Absent:

Member: LTC Rosetta Pride (excused by SJA)
Member: LTC Jose Madera (excused by SJA)

The Board was called to order at 0923 hours on 30 November 2012.

The Memorandum appointing the Board and the applicable substance of the regulations under which it was convened was read aloud by. the Recorder.

The Reporter was sworn.

The Board Members were sworn.

## EXHIBIT "A"--PART 3

July 26, 2012          <u>EXHIBIT "A"-PART 4</u>


TO:  Commander, United States Army Civil Affairs and Psychological
     Operations Command (AIRBORNE) (AFRC-CPC-JA), Fort Bragg,
     North Carolina 28310

FR:  2LT Scott Bennett, 11th Psychological Operations Battalion,
     Upper Marlboro, MD

SUBJECT:  Response to Notice of Show Cause Board and Requests


Commander:

I am in receipt of the memorandum titled "Notice of Show Cause Board"
stamped 3 Jul 2012.  Let it be known I did not receive this memo
by U.S. mail until around 10 days later (approximately July 13, 2012),
and therefore ask the calendar be adjusted accordingly for deadlines
for requests and all communications, etc.

Pursuant to Section 1, I have been informed that a hearing will be
held on 15 August 2012 at 09:00 hours to hear my case.  However
because of the lateness in receiving this memo, my need for copies
of records (see below), my need to review these requests and
records, my need to obtain counsel, my need to communicate with
counsel, my counsel's need to review the records, my need to
generate witness lists and request participation of those witnesses,
and other legal needs and rights I intend to exercise, this hearing
date is too early and not within the 30 day allowance granted
to me to prepare.  Therefore I respectfully request this hearing
be postponed/rescheduled for at least 90 days after the August
15, 2012 date in order to grant me time to prepare.  This need
is obvious and the request reasonable due to my current incarceration
at FCI Schuylkill in Minersville, PA, which seriously limits
my time and access to information and legal resources.

<u>EXHIBIT "A"-PART 4</u>

Pursuant to part 2, I hereby notify you to contact Trial Defense
Service Legal Support Organization on my behalf, and directly
issue an official order (and furnish me a copy of that order)
instructing them to 1) acknowledge your order and my case and
agree to follow that order; 2) assign immediately a military
attorney to contact me for discovery of the issues of my case;
3) assign a military attorney to represent me based on that attorney's
particular strengths, experiences, and history dealing with issues
and circumstances resembling the particular issues and circumstances
of my case and situation; 3) assign me a military attorney with
a Top Secret/ Secret Compartmentalized Information Clearance
(or better) due to the TS/SCI issues, circumstances, and parties
involved in my case; 4) assign me an attorney experienced in
Islamic Counterterrorism, Psychological Operations/ Information
Operations, Counter Threat Finance, State Department Counterterrorism
agency and operations, U.S. Central Command (CENTCOM), CENTCOM's
Counterterrorism Threat Finance agency and operations, CENTCOM'S
Joint Interagency Group (JIAG) and/or Joint Interagency Operations
Center (JIOC), familiar with the 2nd Psychological Operations
Group, the 11th Psychological Operations Battalion, and experienced
in U.S. Special Operations Command.  Additionally knowledge and
experience with MacDill Air Force base and it's CENTCOM, SOCOM,
and Counterthreat Finance mission and operations, and the defense
contractor Booz Allen Hamilton are needed.

These skills, experience, and knowledge levels may best exist
in a team of qualified military attorneys, rather than a single
individual JAG defense lawyer.  Therefore I request such a team
if at all possible to represent my case, as I believe ultimately
it is in the best interests of the Army and the United States.

In the event I determine the military attorneys  assigned to
my case are not representing me adequately or acting in my best
interests, I reserve the right to obtain civilian counsel, and/or
represent myself as "pro se".  Additionally I reserve the right
to be registered and recognized by the court as "co-counsel for
my own defense" with the full rights and priveleges of an attorney,
guaranteed to me under the U.S. Constitution.

2

I want it clearly stated and on the official record that my reason
for making the above requests pertaining to my assignment of counsel
by the military, and my request for you as Commander, U.S. Army
Civil Affairs and Psychological Operations Command, Fort Bragg,
NC 28310, to become directly and personally engaged in my assignment
of counsel and my case, is due to the fact that I have sent numerous
letters and made numerous phone calls to Trial Defense Services
and have received no response whatsoever for the past year.  I
have repeatedly requested assistance and inquiries as an Officer
of the United States Army, and have been completely and utterly
ignored by the United States Army and its Trial Defense Services.
This is inexcusable and a violation of my rights as an Officer
according to both military law and the Constitution of the United
States of America.

Pursuant to part 3, in accordance with AR 135-175, para 2-17,
I have the right to be furnished copies of the records which
will be submitted to the board, and of other pertinent and releasable
documents.  I hereby request from you copies of all of the records
which will be submitted to the board, and of all other pertinent
and releasable documents.  These include, but are not limited
to, the following:
    1.  All emails, letters, telephone recordings/transcripts,
and communications involved in this case, or mentioning my name or
involved parties in this case, or mentioning any issues directly
or indirectly relating to, or that might be influenced or impacted by
this case.  Parties include, but are not limited to: military members,
military contractors, persons associated with the Department of Justice,
the Central Intelligence Agency, the National Reconnaissance Office,
the Defense Intelligence Agency, Congressional members and their
staff or lobbyists, White House/Executive Branch persons, and persons
associated with U.S. Special Operations Command, U.S. Central Command,
Counterterrorism Threat Finance operations at the CENTCOM Joint
Interagency group and/or Joint Interagency Operation Center, and
the defense contracting firm Booz Allen Hamilton and the Carlyle
Group (formally a corporate entity part of Booz Allen Hamilton).

3

4.   All written or recorded notes, papers, computer generated files, documents, or materials of any kind that involve my name, this case, or any other parties, persons or things relating to me, my case, or situation.

5.   Any other materials, persons, or ideas not mentioned above are reserved for request in the future as they appear and become material and/or significant to me or my case.

In accordance with part 3, line b, I reserve my right to consult by correspondence with consulting counsel.  However pursuant to my request in part 2 above regarding my appointment of counsel, I reiterate my request to you to <u>immediately</u> appoint and send a military defense lawyer to <u>visit me in person and in uniform</u> here at FCI Schuylkill, in Minersville, PA 17954-0670.

In accordance with part 3, line d, I preserve my right to submit statements on my behalf, and will only do so after the appointment and acceptance of counsel, as per my request above.  Additionally I forbid the use of this letter/communication to be shared in any way, shape or form with any prosecuting person or party associated with this case, or from the Department of Justice, or a Judge, or any staff or contractor for the military, White House/Executive Branch, Intelligence Agency (domestic or foreign), or the media, or any other person, agency, or government without my express written permission. The only parties authorized to review this letter/communication are:
   1. Yourself as Commander, USACAPOC
   2. Military or civilian defense attorneys assigned to my defense
   3. Persons/parties I determine are necessary to my defense

In accordance with part 3, line e, I do not waive any of my rights, either under military law, federal law, state law, executive order, or otherwise  governed or given by the U.S. Constitution.

In accordance with part 3, line f, I reiterate my request to be given reasonable time to prepare my case by asking for an extension/post-ponement of this hearing for at least ninety (90) days past Aug 15 2012.

4

I reserve my right to request at a later date an additional extension of time should conditions or circumstances warrant it.

In accordance with part 3, line g, I do not want a waiver in any way, shape, or form.

In accordance with part 4 I preserve my right to submit a list of witnesses to appear and be presented on my behalf <u>at a later date</u> after I have been assigned counsel, reviewed the requested documents and materials mentioned above (to which more may be added) to be sent to me by you.

In accordance with part 4, I am submitting this letter and request for a delay and materials within the Aug. 5, 2012 1500 hours deadline.

Pursuant to part 5, regarding the point of contact being SSG Khulafa IL' auuwaahid, I officially request that this person be immediately removed from all involvment with my case, and a replacement be found that possesses the following characteristics and experience and clearance:

    1.    Point of contact must not be a member of the Islamic/Muslim faith, or have family who are, or have direct or indirect connection through family or friends to Middle East countries.  The reason for this involves material, witnesses, and testimony regarding this case that involves Islamic counterterrorism operations, Islamic counter-threat finance agencies and operations and materials, and U.S. government agencies including State Department Counterterrorism, U.S. Special Operations Command, U.S. Central Command, and other agencies engaged in intelligence and counterterrorism.  Failing to do this, in my opinion, represents a compromise of the case, and a threat to national security.

    2.    Point of contact for this case must have a Top Secret/ Secret Compartmentalized Clearance for ability to handle case material.

In accordance with this memo, I will submit a list of witnesses and evidence that I wish to present to the board president (and other essential parties) _after_ I have been 1) assigned and visited with my military defense counsel (to be personally and directly assigned by order from USACAPOC Commander); and 2) all requested materials have been sent to me and reviewed.

Please send all correspondence and materials requested in this matter to me at the following address:
2LT Scott Bennett, U.S. Army
#29418-016
FCI Schuylkill
P.O. Box 670
Minersville, PA 17954-0670


Respectfully,


2LT Scott Bennett

## EXHIBIT "B"

Document is a record of 2LT Scott Bennett's request
in writing to Major General David N. Blackledge,
Commander, Civil Affairs and Psychological Operations
Command for "Military JAG (Judge Advocate General)
counsel representation" for case: 8:11-CR-14-T-33AEP.

2LT Scott Bennett made this request after receiving
an indictment letter.  2LT Bennett's defense to
his military superiors was based on Army regulations
and policies entitling him to military trial defense
counsel, since the matter involved 2LT Bennett's
military transfer from his home unit, the 11th PSYOP
Battalion, to a unit at MacDill Air Force Base, which
had been cleared by 2LT Bennett's superior officers,
and therefore was covered under military jurisdiction.

154th Legal Services was contacted, but did not
provide military defense counsel because it stated
no military members were participating in prosecution
of case.  2LT Bennett requested to his Battalion
Legal Officer, Major Amon, that defense counsel was
needed due to the intrinsic military transfer and
paperwork issues, but LTC. Joel Droba refused to
provide military defense counsel.

**EXHIBIT "B"**



**DEPARTMENT OF THE ARMY**
11TH PSYCHOLOGICAL OPERATIONS BATTALION
6550 DOWER HOUSE ROAD
UPPER MARLBORO, MD 20772

ARRC-CPC-EAPR                               20 February 2011

MEMORANDUM FOR Major General David N. Blackledge, COMMANDER,
CIVIL AFFAIRS AND PSYCHOLOGICAL OPERATIONS COMMAND

SUBJECT:  Response to "Notification of Involuntary Separation"

1.  Sir, I am writing you regarding the matter of my separation
from service. I have three civilian attorneys representing me in
this matter and they have advised me to ask you for a
continuance on this matter. The reasons being legal evidence and
witness testimony has just been received this week and is being
presented in court in April. This material will exonerate me
completely from all charges and expunge my military record of
any perceptions of inappropriate conduct that are cited in your
complaint.

Please send copies of all correspondence to my civilian attorney
in this matter at:

David F. Chalela, Esq.
The Law Offices of David Chalela, P.A.
3111 W. MLK Blvd, Suite 100
Tampa, FL 33607
(813) 368-0822
(813) 350-7801 (fax)
www.tampalawyerteam.com

2.   I respectfully ask you to grant a continuance and postpone
any and all action and deliberation in this matter for 30 days
or until May 2011 when all charges should be cleared.

3.   I am enclosing the appropriate forms and request military
JAG legal counsel representation of me in this matter, and
request any and all materials be sent to me that have been used
by the military as evidence in this matter.  I request a board
of Officer review .

4.   Please send all correspondence and evidentiary materials to
my home address at:

1311 Delaware Ave, SW, S-634, Washington, DC 20024

**EXHIBIT "B"**
Document is a record of 2LT Scott Bennett's request in
writing for "military JAG legal counsel" under military jurisdiction.

*EXHIBIT "B"*

*2LT Bennett's official request for military defense counsel and jurisdiction challenge.*

SUBJECT: Response to "Notification of Involuntary Separation"

SCOTT A. BENNETT
2LT. A.
S-1 OI.

Distribution:
154ᵗʰ Legal Services Organization
Attorney David Chalela
Attorney Ariel Garcia
Attorney Jeff O'Toole

**EXHIBIT "B"**

2LT Bennett contacted 154th Legal Services Organization requesting military defense counsel and military jurisdiction over military transfer, housing, and property-base issues.

EXHIBIT "B"

## EXHIBIT "C"--PARTS 1 and 2 and 3

**PART 1:**   Before Trial, Timothy Goines represented himself
to the Court as a civilian prosecutor.

**PART 2:**   After trial, Timothy Goines changed his listing
with the court from "Special Assistant U.S. Attorney"
to "Captain--U.S. Air Force".

The purpose of this change was to allow Timothy
Goines to deceive the jury into believing that
the military was officially prosecuting Bennett,
when in fact it was not.

Timothy Goines and AUSA Sweeney did not seek
authorization from Judge Hernandez-Covington,
but rather did it with manipulative intent and
with fraud in mind.

By representing himself as an agent of the
Air Force, Timothy Goines violated military
jurisdictional and military defense rights of
2LT Bennett, and most egregiously deceived the
jury and generated prejudice and bias against
Bennett in the minds of the jury, based on his
and AUSA Sweeney's deception.

**PART 3:**   Transcript from trial:  Defense Counsel stipulate's
a challenge to jurisdiction of the case, and
objection to all evidence based on illegal
search and seizure of Bennett by base security
forces violating "Posse Comitatus" 18 USC §1385.
The Court and the government acknowledge this
challenge to jurisdiction and standing objection.

(preserving issue for Appeal §2255)

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Case No. 8:11-cr-14-T-33AEP

UNITED STATES OF AMERICA

-vs-                                            12 April 2011
                                                11:01 a.m.
SCOTT ALLAN BENNETT,                            Courtroom 13A

          Defendant.
------------------------/

TRANSCRIPT OF PROCEEDINGS
(DEFENDANT'S MOTION TO SUPPRESS)
BEFORE THE HONORABLE ANTHONY PORCELLI,
UNITED STATES DISTRICT COURT MAGISTRATE

APPEARANCES

For the Government:   SARA SWEENEY, ESQUIRE
                      Assistant United States Attorney
                      TIMOTHY GOINES, ESQUIRE
                      Special Assistant United States
                          Attorney
                      United States Attorney's Office
                      400 North Tampa Street
                      Suite 3200
                      Tampa, Florida 33602
                      Phone:  (813) 274-6000
                      (813) 274-6178
                      sara.sweeney@usdoj.gov

For the Defendant:    DAVID F. CHALELA, ESQUIRE
                      David Floyd Chalela, P.A.
                      3111 Dr. Martin Luther King,
                          Jr., Boulevard
                      Suite 100
                      Tampa, Florida 33607
                      Phone:  (813) 368-0822
                      davidchalela@yahoo.com

(appearances continued on next page)

STENOGRAPHICALLY REPORTED
COMPUTER-AIDED TRANSCRIPTION

SHERRILL L. JACKSON, RPR, FPR
Federal Official Court Reporter, U.S. District Court
Middle District of Florida, Tampa Division

EXHIBIT "C"--PART 1

EXHIBIT "C"--PART 1: Before Trial, Timothy Goines was listed as a civilian attorney and not as a representative of the United States military prosecution. However in Part 2 (Exhibit C), Goines changed into U.S. AIR FORCE without proper notification to the Judge or Court.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION.

UNITED STATES OF AMERICA,

       Plaintiff,

                         Case No. 8:11-CR-14-T-33AEP
-vs-                     20 July 2011
                        Tampa, Florida
                        9:01 a.m.

SCOTT ALLAN BENNETT,

       Defendant.

-------------------------------/

TRANSCRIPT OF TRIAL PROCEEDINGS
BEFORE THE HONORABLE VIRGINIA M. HERNANDEZ-COVINGTON,
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Government:     SARA C. SWEENEY, ESQUIRE
                         Assistant United States Attorney
                         United States Attorney's Office
                         400 North Tampa Street
                         Suite 3200
                         Tampa, Florida 33602
                         (813) 274-6000

                         KELLEY HOWARD-ALLEN, ESQUIRE
                         Assistant United States Attorney
                         United States Attorney's Office
                         400 North Tampa Street, Suite 3200
                         Tampa, Florida 33602
                         (813) 274-6000

                         **CAPTAIN TIMOTHY GOINES**
                         **U.S. Air Force**

For the Defendant:      **DAVID FLOYD CHALELA, ESQUIRE**
                         David Floyd Chalela, PA
                         Suite 100
                         3111 Dr. Martin Luther King Blvd.
                         Tampa, Florida 33607
                         (813) 368-0822

PAUL K. SPANGLER, RMR
OFFICIAL UNITED STATES COURT REPORTER

**EXHIBIT "C"--PART 2**

EXHIBIT "C"--PART 2: After trial began, Timothy Goines changed his listing with the court from "Special Assistant U.S. Attorney" to "Captain U.S. Air Force". This was not done with Judge Hernandez-Covington's permission, and violated military jurisdiction, §702, and 2LT Bennett's Constitutional rights.

1    MR. CHALELA:  Your Honor, may we approach?

2    THE COURT:  Okay.

3    (Thereupon, the following conversation was had at

4    the bench:)

5    MR. CHALELA:  Thank you, Your Honor.

6    I don't know for sure what he's going to testify

7    to.  I believe he's going to testify to base jurisdiction.

8    If that's all he's going to testify to, we're willing to

9    stipulate to the jurisdiction and the base map just to save

10   time.

11   MS. SWEENEY:  Your Honor, my concern with that is

12   that Mr. Chalela has raised a standing objection to every

13   piece of evidence in this case based on the jurisdictional

14   issue.  I don't see how he can get around it.

15   THE COURT:  Yes.  Let them put on their testimony,

16   okay?  Thank you.

17   (Thereupon, the bench discussion was concluded and

18   the proceedings resumed as follows:)

19   THE COURT:  All right.  Go ahead, Ms. Sweeney.

20                    DIRECT EXAMINATION

21   BY MS. SWEENEY:

22   Q    Thank you, Your Honor.

23        Good morning, Mr. Bell.

24   A    Good morning.

25   Q    Can you just scoot a little closer, or pull the mic

Transcript from trial: Defense Counsel Chalela addresses his ongoing challenge to jurisdiction and objection to evidence based on illegal search and seizure and violation of Posse Comitatus §1385.

EXHIBIT "C"--PART 3:

EXHIBIT "C"--PART 3

EXHIBIT "D"

**PART 1:**   2LT Bennett's "Service School Academic Evaluation Report"(Military jurisdiction Army Regulation 623-3; the proponent agency is DCS, G-1, NOT the U.S. Department of Justice).   Report reflects "superior" evaluation rating.

**PART 2:**   2LT Bennett's "Officer Evaluation Report", indicating that LTC. Joel Droba was not Bennett's Commanding Officer as Sara Sweeney purposely misled the Court and Judge and Jury into believing. Therefore LTC. Joel Droba had no knowledge of or role in 2LT Bennett's transfer from his home unit at the 11th PSYOP Battalion in Washington DC down to MacDill Air Force Base to U.S. CENTCOM, SOCOM, or other Army Reserve unit in Tampa, Florida. LTC. Joel Droba may in fact be in violation of 18 USC§1001 (making a false statement) or perjury when he made statements infering that he was "Bennett's Commanding Officer at the time". The fact is Major James E. Simpson, Jr. was Scott Bennett's Commanding Officer at the time of Bennett's transfer and activities at MacDill AFB as reflected in the official Army document. Document establishes 2LT Bennett as "outstanding", "exceptional", "intelligent", "motivated" Officer with unlimited potential.   Best qualified also.

Document also establishes 2LT Bennett as a defense contractor in the field of "Influence Operations" (Islamic Psychological Operations), and his transition into Psychological Operations Officer (37A) position.

**PART 3:**   2LT Bennett's Direct Commission as an Army Officer establishing all activities, duties, and military related work to be governed exclusively under military jurisdiction, according to the following federal laws, Department of Defense directives, and Army Regulations:  AR 135-100; AR 145-1, AR 351-5; AR 601-100; Title 10 USC, Section 3012 (Title 5 USC, Section 552a); and the proponent agency is DCSPER.   Document also establishes 2LT Bennett's education: 58 classes taken (double major;) for Bachelor Science; 14 classes taken for Masters of Arts; 15 classes taken for Ph.D. studies in Political Theory.

**PART 4:**   Bennett's prior job title: U.S. Dept. Health and Human Services, Program Analyst, Washington DC.

EXHIBIT "D"--PART 1

*ASe 3007/0 /4*

| SERVICE SCHOOL ACADEMIC EVALUATION REPORT | | DATE (YYYYMMDD) |
|---|---|---|
| For use of this form, see AR 623-3; the proponent agency is DCS, G-1. | | 20091001 |

| 1. LAST NAME - FIRST NAME - MIDDLE INITIAL | 2. SSN | 3. GRADE | 4. BR | 5. SPECIALTY/MOSC |
|---|---|---|---|---|
| ...NNETT, SCOTT A. | 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 | O1 | AG | 42B |

| 6. COURSE TITLE | 7. NAME OF SCHOOL | 8. COMP |
|---|---|---|
| AGBOLC III, CLASS 08-09 | ADJUTANT GENERAL SCHOOL | USAR |

| 9. THIS IS A REFERRED REPORT, DO YOU WISH TO MAKE COMMENTS? | 10. DURATION OF COURSE (YYYYMMDD) | |
|---|---|---|
| ☐ YES ☐ NO | From: 20090803 | Thru: 20091002 |

**11. PERFORMANCE SUMMARY**

*a. ☐ EXCEEDED COURSE STANDARDS
   (Limited to 20% of class enrollment)

b. ☒ ACHIEVED COURSE STANDARDS

*c. ☐ MARGINALLY ACHIEVED COURSE STANDARDS

*d. ☐ FAILED TO ACHIEVE COURSE STANDARDS

*Rating must be supported by comments in ITEM 14.

**12. DEMONSTRATED ABILITIES**

a. WRITTEN COMMUNICATION
☐ NOT EVALUATED ☐ UNSAT ☒ SAT ☐ SUPERIOR

b. ORAL COMMUNICATION
☐ NOT EVALUATED ☐ UNSAT ☒ SAT ☐ SUPERIOR

c. LEADERSHIP SKILLS
☐ NOT EVALUATED ☐ UNSAT ☒ SAT ☐ SUPERIOR

d. CONTRIBUTION TO GROUP WORK
☐ NOT EVALUATED ☐ UNSAT ☐ SAT ☒ SUPERIOR

e. EVALUATION OF STUDENT'S RESEARCH ABILITY
☐ NOT EVALUATED ☐ UNSAT ☐ SAT ☒ SUPERIOR
(SUPERIOR/UNSAT rating must be supported by comments in ITEM 14

**13. HAS THE STUDENT DEMONSTRATED THE ACADEMIC POTENTIAL FOR SELECTION TO HIGHER LEVEL SCHOOLING/TRAINING?**
☒ YES ☐ NO ☐ N/A (A "NO" response must be supported by comments in ITEM 14)

**14. COMMENTS** (This item is intended to obtain a word picture of each student that will accurately and completely portray academic performance, intellectual qualities, and communication skills and abilities. The narrative should also discuss broader aspects of the student's potential, leadership capabilities, moral and overall professional qualities. In particular, comments should be made if the student failed to respond to recommendations for improving academic or personal affairs.)

...nd Lieutenant Scott A. Bennett performed well during Adjutant General Basic Officer Leaders Course 08-09. 2LT Bennett truly strived to learn row through his experiences in the class, and he exhibited and expected nothing but the highest standards of professionalism throughout the ...se. Academically, he maintained a grade point average of 87.25%. 2LT Bennett is a effective briefer with the ability to organize information into a clear, concise presentation. In addition, he displayed a firm understanding of Human Resources doctrine both in the classroom and in practical application. He further demonstrated this proficiency throughout a four-day command post exercise and three-day field training exercise, during which he served as a Battalion S1. Overall, 2LT Bennett was a capable student who made many contributions to the class not only as a class member, but also as the class leader. Place 2LT Bennett as an Assistant Brigade S1 now and continue to groom for Battalion S1; he will do well. He has strong potential in the Army.

0908 PASS 65/170 YES

**15. AUTHENTICATION**

| a. TYPED NAME, GRADE, BRANCH, AND TITLE OF RATER · | DATE (YYYYMMDD) | SIGNATURE |
|---|---|---|
| NICOLE L. JEPSEN, O3, AG, CLASS ADVISOR | 20091001 | |
| b. TYPED NAME, GRADE, BRANCH, AND TITLE OF REVIEWING OFFICER | DATE (YYYYMMDD) | SIGNATURE |
| ...I C. GRAVES, O4, AG, CHIEF BOTD AGS | 20091001 | |

| ...TE (YYYYMMDD) | SIGNATURE OF RATED SOLDIER |
|---|---|
| Oct 2009 10 01 | |

DA FORM 1059, MAR 2006     PREVIOUS EDITIONS ARE OBSOLETE.     APD PE v1.00ES

EXHIBIT "D"--PART 1

EXHIBIT "D"--PART 2

04930330

| OFFICER EVALUATION REPORT | FOR OFFICIAL USE ONLY (FOUO) |
|---|---|
| For use of this form, see AR 623-3; the proponent agency is DCS, G-1. | SEE PRIVACY ACT STATEMENT IN AR 623-3. |

**PART I - ADMINISTRATIVE DATA**

| a. NAME (Last, First, Middle Initial) | b. SSN | c. RANK | d. DATE OF RANK (YYYYMMDD) | e. BRANCH | f. SPECIALTY / PMOS (WO) |
|---|---|---|---|---|---|
| BENNETT, SCOTT A. | 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 | 2LT | 20090208 | AG | 42A |

| g. UNIT, ORG., STATION, ZIP CODE OR APO, MAJOR COMMAND | g.2. STATUS CODE | h. REASON FOR SUBMISSION |
|---|---|---|
| 11th POB, UPPER MARLBORO, MD 20772        USARC | TPU        02 | Annual |

| i. PERIOD COVERED | | j. RATED MONTHS | k. NONRATED CODES | l. NO. OF ENCL | m. RATED OFFICER'S AKO EMAIL ADDRESS (gov or mil) | n. UIC | o. CMD CODE | p. PSB CODE |
|---|---|---|---|---|---|---|---|---|
| FROM (YYYYMMDD) | THRU (YYYYMMDD) | 12 | | 0 | scoot.allan.bennett@us.army.mil | WTLXAA | S5 | |
| 20090208 | 20100207 | | | | | | | |

**PART II - AUTHENTICATION** *(Rated officer's signature verifies officer has seen completed OER Parts I-VII and the admin data is correct)*

| a. NAME OF RATER (Last, First, MI) | SSN | RANK | POSITION | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|---|---|
| PARSONS, PAUL E. | 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 | MAJ | BATTALION S3 | PARSONS.PAUL.E.10791408 | 20100611 |

| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | SSN | RANK | POSITION | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|---|---|
| | | | | | |

| c. NAME OF SENIOR RATER (Last, First, MI) | SSN | RANK | POSITION | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|---|---|
| SIMPSON JR, JAMES E. | 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 | MAJ | BATTALION XO | SIMPSON.JAMES.EDWARD.JR.104904 | 20100621 |

| SENIOR RATER'S ORGANIZATION | BRANCH | SENIOR RATER TELEPHONE NUMBER | E-MAIL ADDRESS (gov or mil) |
|---|---|---|---|
| 11TH POB UPPER MARLBORO, MD 20772 | PO | (301) 599-4414 | james.simpsonjr@us.army.mil |

d. This is a referred report, do you wish to make comments? ☐ No ☐ Yes, comments are attached

e. SIGNATURE OF RATED OFFICER ____ DATE (YYYYMMDD) ____

**PART III - DUTY DESCRIPTION**

| a. PRINCIPAL DUTY TITLE  Battalion S1 | b. POSITION AOC/BR  42A/AG |
|---|---|

c. SIGNIFICANT DUTIES AND RESPONSIBILITIES. REFER TO PART IVa, DA FORM 67-9-1.

Adjutant for a tactical Psychological Operations (PSYOP) Battalion composed of five Tactical PSYOP Companies; responsible for planning, coordinating, and reporting the status of all personnel for the Battalion; plan, develop, and direct personnel systems - strength and personnel accounting, casualty reporting, awards, promotions, classifications and reclassification, assignment, personnel evaluations, maintenance of personnel records, reenlistment, eliminations and separations.

**PART IV - PERFORMANCE EVALUATION - PROFESSIONALISM** *(Rater)*

CHARACTER Disposition of the leader: combination of values, attributes, and skills affecting leader actions

a. ARMY VALUES *(Comments mandatory for all "NO" entries. Use PART Vb.)*

| | Yes | No | | | Yes | No |
|---|---|---|---|---|---|---|
| 1. HONOR: Adherence to the Army's publicly declared code of values | ☒ | | | 5. RESPECT: Promotes dignity, consideration, fairness, & EO | ☒ | |
| 2. INTEGRITY: Possesses high personal moral standards; honest in word and deed | ☒ | | | 6. SELFLESS-SERVICE: Places Army priorities before self | ☒ | |
| 3. COURAGE: Manifests physical and moral bravery | ☒ | | | 7. DUTY: Fulfills professional, legal, and moral obligations | ☒ | |
| 4. LOYALTY: Bears true faith and allegiance to the U.S. Constitution, the Army, the unit, and the soldier | | | | | ☒ | |

b. LEADER ATTRIBUTES / SKILLS / ACTIONS: First, mark "YES" or "NO" for each block. Second, choose a total of six that best describe the rated officer. Select one from ATTRIBUTES, two from SKILLS (Competence), and three from ACTIONS (LEADERSHIP). Place an "X" in the appropriate numbered box with optional comments in PART Vb. Comments are mandatory in Part Vb for all "No" entries.

| b.1 ATTRIBUTES (Select 1) Fundamental qualities and characteristics | ☒1. MENTAL Possesses desire, will, initiative, and discipline [YES][NO] | ☐2. PHYSICAL Maintains appropriate level of physical fitness and military bearing [YES][NO] | ☐3. EMOTIONAL Displays self-control; calm under pressure [YES][NO] |
|---|---|---|---|
| b.2 SKILLS (Competence) (Select 2) Skill development is part of self-development; prerequisite to action | ☒1. CONCEPTUAL Demonstrates sound judgment, critical/creative thinking, moral reasoning [YES][NO] | ☐2. INTERPERSONAL Shows skill with people: coaching, teaching, counseling, motivating and empowering [YES][NO] | ☐3. TECHNICAL Possesses the necessary expertise to accomplish all tasks and functions [YES][NO] |
| | ☐4. TACTICAL Demonstrates proficiency in required professional knowledge, judgment, and warfighting | | [YES][NO] |

b.3. ACTIONS (LEADERSHIP) (Select 3) Major activities leaders perform: Influencing, operating, and improving

| INFLUENCING Method of reaching goals while operating / improving | ☐1. COMMUNICATING Displays good oral, written, and listening skills for individuals / groups [YES][NO] | ☐2. DECISION-MAKING Employs sound judgment, logical reasoning and uses resources wisely [YES][NO] | ☐3. MOTIVATING Inspires, motivates, and guides others toward mission accomplishment [YES][NO] |
|---|---|---|---|
| OPERATING Short-term mission accomplishment | ☐4. PLANNING Develops detailed, executable plans that are feasible, acceptable, and suitable [YES][NO] | ☐5. EXECUTING Shows tactical proficiency, meets mission standards, and takes care of people/resources [YES][NO] | ☒6. ASSESSING Uses after-action and evaluation tools to facilitate consistent improvement [YES][NO] |
| IMPROVING Long-term improvement in the Army people and organizations | ☐7. DEVELOPING Invests adequate time and effort to develop individual subordinates as leaders | ☐8. BUILDING Spends time and resources improving teams, groups and units; fosters ethical climate | ☐9. LEARNING Seeks self-improvement and organizational growth; envisioning, adapting and leading change |

| c. APFT: PASS | DATE: 20090805 | HEIGHT: 65 | WEIGHT: 173 | YES |
|---|---|---|---|---|

d. OFFICER DEVELOPMENT - MANDATORY YES OR NO ENTRY FOR RATERS OF CPTs, LTs, CW2s, AND WO1s.

WERE DEVELOPMENTAL TASKS RECORDED ON DA FORM 67-9-1a AND QUARTERLY FOLLOW-UP COUNSELINGS CONDUCTED?  [YES] ☒ [NO]

| DA FORM 67-9, MAR 2006 | PREVIOUS EDITIONS ARE OBSOLETE. | Page 1 of 2 |
|---|---|---|
| | | APD PE v6.60ES |

EXHIBIT "D"--PART 2

EXHIBIT "D"--PART 2

| NAME BENNETT, SCOTT A. | SSN 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 | PERIOD COVERED 20090208 - 20100207 |

**PART V - PERFORMANCE AND POTENTIAL EVALUATION** *(Rater)*

a. EVALUATE THE RATED OFFICER'S PERFORMANCE DURING THE RATING PERIOD AND HIS/HER POTENTIAL FOR PROMOTION

- ☒ OUTSTANDING PERFORMANCE, MUST PROMOTE
- ☐ SATISFACTORY PERFORMANCE, PROMOTE
- ☐ UNSATISFACTORY PERFORMANCE, DO NOT PROMOTE
- ☐ OTHER *(Explain)*

b. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE, REFER TO PART III, DA FORM 67-9 AND PART IVa, b, AND PART Vb, DA FORM 67-9-1.

Outstanding performance by 2LT Scott Bennett during this rating period. His overall performance, initiative, self-motivation and team building skills were exceptional. While serving as the Battalion S1, Scott was very motivated in having his section work as a team by motivating and empowering his personnel. His esprit-de-corps was contagious and he fostered a very ethical climate within the S1 shop. He was instrumental in developing and updating all of the Battalion policy memorandums. He also was instrumental in developing a tracking mechanism to reduce the overdue OERs and NCOERs across the Battalion to less than 1.5% during this period. During this busy rating period, Scott also attended and graduated all three phases of the Basic Officer Leader's Course. Due to his required absences to attend all three phases of the Basic Officer Leader's Course, he was not able to complete an OER Support Form and developmental counselings were not completed.

c. COMMENT ON POTENTIAL FOR PROMOTION.

Promote 2LT Bennett to 1LT now. He is ready to assume duties of increased responsibility. 2LT Bennett's potential to the Army is unlimited. Continue to monitor his career closely.

d. IDENTIFY ANY UNIQUE PROFESSIONAL SKILLS OR AREAS OF EXPERTISE OF VALUE TO THE ARMY THAT THIS OFFICER POSSESSES. FOR ARMY COMPETITIVE CATEGORY CPT ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.

2LT Bennett's civilian occupation as a contractor in the field of Influence Operations will be helpful once he transitions into a 37A (PSYOP Officer) position.

**PART VI - INTERMEDIATE RATER**

**PART VII -SENIOR RATER**

a. EVALUATE THE RATED OFFICER'S PROMOTION POTENTIAL TO THE NEXT HIGHER GRADE

- ☒ BEST QUALIFIED
- ☐ FULLY QUALIFIED
- ☐ DO NOT PROMOTE
- ☐ OTHER *(Explain below)*

I currently senior rate 2 officer(s) in this grade
A completed DA Form 67-9-1 was received with this report and considered in my evaluation and review ☐ YES ☒ NO *(Explain in c)*

b. POTENTIAL COMPARED WITH OFFICERS SENIOR RATED IN SAME GRADE (OVERPRINTED BY DA)
HQDA COMPARISON OF THE SENIOR RATER'S PROFILE AND BOX CHECK AT THE TIME THIS REPORT PROCESSED

*NO BOX CHECK*

RO: 2LT BENNETT SCOTT A
550817283
SR: MAJ SIMPSON JR JAMES E
229375937
DATE: 2010 08 25
TOTAL RATINGS:
THIS OFFICER:

c. COMMENT ON PERFORMANCE/POTENTIAL

Outstanding performance by 2LT Bennett. He is an intelligent and motivated officer who can get the job done. As the Battalion S1, I charged Scott to develop a tracking mechanism to reduce the overdue OERs and NCOERs across the Battalion. He accomplished this with excellence and incorporated this tracking mechanism into the Battalion Command and Staff brief. This helped the Battalion reduce the amount of overdue reports to less than 1.5%. Scott also managed to update and post the new Battalion policy memorandums in a timely manner. 2LT Bennett's potential to the Army is unlimited. He is ready to take on duties above his current rank. Continue to monitor his career closely and promote him to 1LT now. Due to Scott attending the Basic Officer Leader's Course, a 67-9-1 and 67-9-1a were not completed during this rating period. Officer is unavailable for signature.

d. LIST THREE FUTURE ASSIGNMENTS FOR WHICH THIS OFFICER IS BEST SUITED.
FOR ARMY COMPETITIVE CATEGORY CPT, ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.

Battalion S1, PSYOP Officer, Battalion Assistant Operations Officer

DA FORM 67-9, MAR 2006

Page 2 of 2
APD PE v6.50ES

EXHIBIT "D"--PART 2

## EXHIBIT "D"--PART 3

**APPLICATION FOR APPOINTMENT**
For use of this form, see AR 135-100, AR 145-1, AR 351-5, and AR 601-100; the proponent agency is DCSPER

**DATA REQUIRED BY THE PRIVACY ACT OF 1974**

| | |
|---|---|
| AUTHORITY: | Title 10 United States Code, Section 3012 (Title 5 United States Code, Section 552a) |
| PRINCIPAL PURPOSE: | To obtain an appointment as a commissioned or warrant officer in the Regular Army or Army Reserve, or to obtain selection to attend the US Army Officer Candidate School. |
| ROUTINE USES: | Basis for determination of qualifications and background information for eligibility for consideration for appointment as a Regular Army or Army Reserve commissioned/warrant officer or for selection for attendance at the US Army Officer Candidate School. |
| DISCLOSURE | Disclosure of information requested in DA Form 61 is voluntary. Failure to provide the required information will result in non-acceptability of the application. |

**1. TYPE OF APPOINTMENT FOR WHICH APPLICATION IS SUBMITTED**

| | |
|---|---|
| | COMMISSIONED OFFICER - REGULAR ARMY |
| X | COMMISSIONED OFFICER - ARMY RESERVE |
| | WARRANT OFFICER - REGULAR ARMY |
| | WARRANT OFFICER - ARMY RESERVE |
| | OFFICER CANDIDATE SCHOOL |

**2. GOVERNING REGULATION OR CIRCULAR** (Specify appropriate section(s) if applicable)
AR 135-100

**3. GRADE FOR WHICH APPLYING** (Reserve appointments only) O-1

**4. SOURCE OF APPLICATION** (ROTC only)

| | | DMG | DATE DESIGNATED: |
| | | SCHOLARSHIP - ENTER 1, 2, 3 OR 4 YEARS: |

**5. ONLY FOR APPLICANTS FOR APPOINTMENT AS WARRANT OFFICERS** (List choice by MOS code and title)

| a. MOS CODE | b. MOS TITLE |
|---|---|
| | |

**6. BRANCH AND SPECIALTY PREFERENCES**

Regular Army and Officer Candidate applicants and all ROTC graduates:
In numerical sequence, indicate 10 branch preferences other than CA and SS.

USAR applicants: If applying for a specific Reserve vacancy, indicate ONLY the branch of the vacant position; all other applicants may enter more than one branch.

**PERSONAL DATA**

| PREFER-ENCE | BRANCH | SPECIALTY |
|---|---|---|
| | AD | |
| | AG | |
| | AR | |
| | AV | |
| 3 | CA | |
| | CM | |
| | EN | |
| | FA | |
| | FI | |
| | IN | |
| 2 | MI | |
| | MP | |
| | OD | |
| 1 | QM | |
| | SC | |
| | SS | |
| | TC | |
| | AN | |
| | CH | |
| | DE | |
| | JA | |
| | MC | |
| | MS | |
| | SP | |
| | VC | |

**7. NAME** (Last, first, middle)(Explain variations from birth certificate in Item 41)
BENNETT, SCOTT, ALLEN

**8. GRADE** CIV

**9a. SOCIAL SECURITY NUMBER** 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

**10. BRANCH** (MOS if enl or wo) CIV
**11. TOTAL YRS ACTIVE SERVICE** 0
**12. MARITAL STATUS** S
**13. NUMBER OF DEPENDENTS UNDER 18 YEARS OF AGE** 0
**9b. SELECTIVE SERVICE NUMBER** NA

**14. DATE OF BIRTH** 08 JAN 71
**15. PLACE OF BIRTH** (City, county, state) EDINBURGH SCOTLAND
**16. SEX** M
**17. COMPLETE MILITARY ADDRESS** (If presently on active duty) (Include ZIP Code) NA
PHONE AND/OR AUTOVON NUMBER NA

**18. PERMANENT ADDRESS** (Include ZIP Code)
311 DELAWARE AVE, SW S-634
WASHINGTON DC 20024
PHONE (Include area code) 202-484-7873

**19. CURRENT MAILING ADDRESS** (If difference from Item 18) (Include ZIP Code)
Same as Block #18
PHONE (Include area code)

**20.**
| a. US CITIZEN | X YES | NO | a. NATIVE | X YES | NO | X NATURALIZATION | DERIVED | IMMIGRANT |

**c. APPLICANT'S CERTIFICATE NO.** (If Item b. checked) (Date, place, court)
CERTIFICATE NUMBER AA940564
FAIRFAX VIRGINIA 22030

**21. CIVILIAN EDUCATION** (See page 3 for additional requirements for professional personnel)

**a. HIGH SCHOOL GRADUATE** X YES   **b. NAME AND LOCATION OF HIGH SCHOOL**
SAN RAMAN VALLEY HIGH SCHOOL, DANVILLE, CA 94526

| c. NAME AND LOCATION OF EACH COLLEGE OR UNIVERSITY ATTENDED (Include USMA, USNA, USAFA, USCGA, and USMMA) | (1) DEGREE | (2) SEMESTER CREDITS EARNED | (3) YEARS ATTENDED | (4) DATE GRADUATED OR WILL GRADUATE DAY | MONTH | YEAR | (5) MAJOR SUBJECT |
|---|---|---|---|---|---|---|---|
| CATH. UNIV , WASHINGTON D.C. | Ph. D. | 45 | 3 | 1 | 5 | 2008 | POLITICAL THEORY |
| GEORGE MASON UNIV FAIRFAX VA | MS | 43 | 3 | 1 | 6 | 2001 | INTENATIONAL |
| SAN JOSE ST UNIV SAN JOSE CA | BS | 175 | 4 | 12 | 12 | 1999 | ADVERTISING |
| | | | | | | | |

**d. SPECIAL EDUCATIONAL HONORS, SCHOLAR-SHIPS, ETC.**

**e. IF YOU HAVE EVER BEEN EXPELLED FROM SCHOOL, OR PLACED ON PROBATION, EITHER FOR ACADEMIC OR DISCIPLINARY REASONS, EXPLAIN** (Continue in Item 41(Remarks))

**HIGHEST LEVEL SERVICE SCHOOL ATTENDED**

| a. NAME OF SCHOOL | b. COURSE | c. DATES (Mo-Yr) FROM | TO | COMPLETED YES | NO | d. IF NOT COMPLETED GIVE REASON |
|---|---|---|---|---|---|---|
| NA | NA | | | | | |

**23a. FOREIGN LANGUAGES AND DEGREE OF PROFICIENCY**

**b. ALAT SCORE** (If applicable)

RECEIVED
12 MAY 2008
PERSCOM
Appointments

APD PE v2.00ES

(right margin, vertical text) EXHIBIT "D"--PART 3 : Army jurisdiction authority, not civilian; 2LT Bennett advanced education/Commission status.

EXHIBIT "D" --PART 3

· 03/10/2009 15:50 FAX 703__2 3553          BOOZ ALLEN & HAMI__N                    ☑002/006


THE CATHOLIC UNIVERSITY
of AMERICA

**Transcript Results**

The Catholic University of America
Cardinal Station
Washington, DC 20064
United States
Name      : Bennett,Scott A.
Student ID: 2066736

Print Date  : 2004-08-18
              - - - - -   External Degrees   - - - - -
San Jose State University
            Bachelor of Arts
            Field of Study : Advertising
George Mason University
            Master of Arts
            Field of Study : Public Policy
            - - - - -   Academic Program History   - - - - -
Program     : Arts & Sciences GR
            Active in Program
            2001-08-27 : Politics — PhD Concentration
            - - - - -   Beginning of Graduate Record   - - - - -
            Fall 2001  (2001-08-27 to 2001-12-15)
Session  : Regular Academic Session

| POL | 538 | International Political Economy | 3.00 | 3.00 | A | 12.000 |
|-----|-----|--------------------------------|------|------|-----|--------|
| Instructor | : O'Leary,James P. | | | | | |
| POL | 570 | Contemporary Irish Society | 3.00 | 3.00 | A | 12.000 |
| Instructor | : Mahony,Robert E. | | | | | |
| POL | 651 | Political Theory I | 3.00 | 3.00 | B+ | 9.900 |
| Instructor | : Ryn,Claes G. | | | | | |
| TERM GPA : | 3.767 | TERM TOTALS : | 9.00 | 9.00 | | 33.900 |
| CUM GPA : | 3.767 | CUM TOTALS : | 9.00 | 9.00 | | 33.900 |

            Spring 2002  (2002-01-07 to 2002-05-04)
Session  : Regular Academic Session

| POL | 555 | Conservatism | 3.00 | 3.00 | B+ | 9.900 |
|-----|-----|--------------|------|------|-----|--------|
| Instructor | : Ryn,Claes G. | | | | | |
| POL | 644 | Mod Christian Pol Thought | 3.00 | 3.00 | B | 9.000 |
| Instructor | : Walsh,David J. | | | | | |
| POL | 652 | Political Theory II | 3.00 | 3.00 | B | 9.000 |
| Instructor | : Ryn,Claes G. | | | | | |
| TERM GPA : | 3.100 | TERM TOTALS : | 9.00 | 9.00 | | 27.900 |
| CUM GPA : | 3.433 | CUM TOTALS : | 18.00 | 18.00 | | 61.800 |

            Fall 2002  (2002-08-26 to 2002-12-14)
Session  : Regular Academic Session

EXHIBIT "D"--PART 3

03/10/2009 15:50 FAX  703  2 3553          BOOZ ALLEN & HAM1  N                    ☒003/006

| | | | | | | |
|---|---|---|---|---|---|---|
| POL | 615 | Thry: Interpretation&Critique | 3.00 | 3.00 B+ | | 9.900 |
| | Instructor | : Schneck,Stephen F. | | | | |
| POL | 645 | Classical Political Thought | 3.00 | 3.00 B+ | | 9.900 |
| | Instructor | : Walsh,David J. | | | | |
| POL | 706 | Seminar: Voegelin | 3.00 | 3.00 B+ | | 9.900 |
| | Instructor | : Walsh,David J. | | | | |
| | TERM GPA : | 3.300 | TERM TOTALS : | 9.00 | 9.00 | 29.700 |
| | CUM  GPA : | 3.389 | CUM  TOTALS : | 27.00 | 27.00 | 91.500 |

Spring 2003  (2003-01-13 to 2003-05-10)

Session  : Regular Academic Session

| | | | | | | |
|---|---|---|---|---|---|---|
| CPOL | 529 | Liberalism & Its Critics | 3.00 | 3.00 B | | 9.000 |
| | Instructor | : Walsh,David J. | | | | |
| POL | 577 | Political Theory Amer.Framing | 3.00 | 3.00 B+ | | 9.900 |
| | Instructor | : Schneck,Stephen F. | | | | |
| POL | 702 | Sem:Philosophy & History | 3.00 | 3.00 B | | 9.000 |
| | Instructor | : Walsh,David J. | | | | |
| POL | 723 | Seminar:Politics & Imagination | 3.00 | 3.00 B- | | 8.100 |
| | Instructor | : Ryn,Claes G. | | | | |
| | TERM GPA : | 3.000 | TERM TOTALS : | 12.00 | 12.00 | 36.000 |
| | CUM  GPA : | 3.269 | CUM  TOTALS : | 39.00 | 39.00 | 127.500 |

Summer 2003  (2003-05-12 to 2003-08-10)

Session  : Session 15: 5 Week Session

| | | | | | | |
|---|---|---|---|---|---|---|
| FREN | 500 | Reading for Comprehension | | 0.00 P | | |
| | Instructor | : Grimbert,Joan Tasker | | | | |
| | Grading Basis: Pass/No Grade | | | | | |
| | TERM GPA : | 0.000 | TERM TOTALS : | 0.00 | 0.00 | 0.000 |
| | CUM  GPA : | 3.269 | CUM  TOTALS : | 39.00 | 39.00 | 127.500 |

Fall 2003  (2003-08-25 to 2003-12-13)

Session  : Regular Academic Session

| | | | | | | |
|---|---|---|---|---|---|---|
| COMP | 698 | Doctoral Comps (with classes) | | 0.00 W | | |
| | Grading Basis: Withdrawal | | | | | |
| POL | 556 | The Moral Problem of Politics | 3.00 | 3.00 B | | 9.000 |
| | Instructor | : Ryn,Claes G. | | | | |
| POL | 710 | Sem:Rousseau and Kant | 3.00 | 3.00 B+ | | 9.900 |
| | Instructor | : Schneck,Stephen F. | | | | |
| | TERM GPA : | 3.150 | TERM TOTALS : | 6.00 | 6.00 | 18.900 |
| | CUM  GPA : | 3.253 | CUM  TOTALS : | 45.00 | 45.00 | 146.400 |

Spring 2004  (2004-01-12 to 2004-05-08)

Session  : Regular Academic Session

| | | | | | | |
|---|---|---|---|---|---|---|
| COMP | 699 | Doctoral Comps (no classes) | | 0.00 | | |
| | Grading Basis: No Grade Associated | | | | | |
| | TERM GPA : | 0.000 | TERM TOTALS : | 0.00 | 0.00 | 0.000 |
| | CUM  GPA : | 3.253 | CUM  TOTALS : | 45.00 | 45.00 | 146.400 |

## EXHIBIT "D"--PART 4

| 34. *APPLICANTS FOR JUDGE ADVOCATE GENERAL'S CORPS ONLY* | 35. *APPLICANTS FOR CHAPLAINS BRANCH ONLY* |
|---|---|
| BARS OF WHICH YOU ARE A MEMBER *(Specify dates)* | RELIGIOUS DENOMINATION BY WHICH YOU WILL BE ENDORSED |

**36. APPLICANTS FOR MEDICAL AND DENTAL CORPS ONLY**

| a. TRAINING | | b. NAME AND LOCATION OF HOSPITAL | c. DATES  *(Month and Year)* | |
|---|---|---|---|---|
| LEVEL | TYPE | | FROM | TO |
| INTERNSHIP | | | | |
| RESIDENCY TNG | | | | |
| SPECIALTY TNG | | | | |

| d. SPECIALTY BOARDS | e. DATES OF CERTIFICATION *(Day, Month, Yr)* |
|---|---|
| | |
| | |

f. PLACE IN WHICH CURRENTLY LICENSED

**37. APPLICANTS FOR ARMY NURSE CORPS AND ARMY MEDICAL SPECIALIST CORPS ONLY**

| a. NAME OF NURSING OR ACCREDITED PROFESSIONAL SCHOOL | | b. LOCATION | |
|---|---|---|---|

| c. DATES OF ATTENDANCE *(Mo, Yr)* | | d. STATE AND CURRENT REGISTRATION NUMBER | e. STATE AND DATE OF INITIAL REGISTRATION *(Day, Month, Year)* |
|---|---|---|---|
| FROM | TO | | |

f. POSTGRADUATE COURSES   *(Include courses at general hospitals, service schools, and short courses)*

| (1) SUBJECT OR COURSE | (2) NAME AND LOCATION OF SCHOOL OR HOSPITAL | (3) SEMESTER CREDITS EARNED | (4) DATES OF ATTENDANCE  *(Month, Year)* | |
|---|---|---|---|---|
| | | | FROM | TO |
| | | | | |
| | | | | |

HAVE YOU BEEN EMPLOYED BY THE US ARMY AS A DIETITIAN, OCCUPATIONAL OR PHYSICAL THERAPIST? *(If yes, give dates)*

☐ YES   ☐ NO

**38. ARMY ROTC** *(To be completed only by prospective ROTC graduates applying for appointment in USAR or RA)*

SUCCESSFULLY COMPLETED AROTC PROGRAM AS FOLLOWS

| COURSE | DATES ATTENDED  *(Month and Year)* | | c. CAMP TRAINING | |
|---|---|---|---|---|
| | FROM | TO | | |
| a. BASIC | | | (1) INSTALLATION *(Basic)* | COMPLETION DATE *(Month, Year)* |
| b. ADVANCED | | | (2) INSTALLATION  *(Advanced/Ranger)* | COMPLETION DATE *(Month, Year)* |

**40. MAIN CIVILIAN EMPLOYMENT**

| a. NAME AND ADDRESS OF EMPLOYER | b. JOB TITLE | c. MONTH AND YEAR | |
|---|---|---|---|
| US Dept Health & Human Services 1250 Maryland Ave, Washington D.C. 20024 | FEDERAL PROGRAM ANALYST | FROM 1203 | TO PRESENT |

b. PRINCIPAL DUTIES *(Describe briefly)*

Manage Federal Government Programs, Grants, Conferences for Health & Human Services

**41. REMARKS** *(Experience, proficiencies and special abilities not shown elsewhere in this application. Those required to enter primary entry specialties, see Para 1-27d,e, AR 601-100). (If more space is required, attach additional sheet)*

"I understand that I must complete a resident officer basic course within 36 months from the date of appointment as a lieutenant or be subject to discharge per AR 135-175 for failure to complete a basic branch course."

Phone number  (703) 377-4229

| 42. THE INFORMATION CONTAINED HEREIN IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF. | DATE 2/6/08 | SIGNATURE OF APPLICANT |
|---|---|---|

APD PE v2.00ES

*EXHIBIT "D"--PART 4:  2LT Bennett prior G.W. Bush Administration assignment.*

<u>EXHIBIT "E"</u>

Document establishing that <u>LTC. Joyce Bush, and NOT
LTC. Joel Droba,</u> was 2LT Scott Bennett's controlling
superior Officer (Battalion Commander) at time
2LT Bennett initiated his transfer process from his
home unit, the 11th Psychological Operations Battalion,
down to MacDill Air Force Base for assignment to Army unit
there (U.S. CENTCOM or U.S. SOCOM or other unit).
<u>Major James Simpson</u> was LTC. Joyce Bush's Executive Officer
at the time, and responsible for authorizing, allowing,
and finalizing 2LT Bennett's transfer paperwork, after
approval was given by <u>Captain Chris Jenkins</u>, Bennett's
company commander.

AUSA Sweeney <u>deceived the court</u> by presenting LTC. Joel
Droba as Bennett's Commander and therefore knowledgeable
about Bennett's transfer issues.  This was materially false.

<u>Military</u> jurisdiction established (NOT civilian Justice
Department jurisdiction) over activities related to
military performance of duty, according to the following
Federal laws, Department of Defense directives and policies,
and Army Regulations:  5USC §§3331, 552, 552a; 10USC §1024;
10USC §626, 14309; 10USC §1031; Uniform Code of Military
Justice, Article 136; 10USC §936.

Document also establishes that an Officer has the same
powers and protections "<u>whether or not on active duty</u>"
(See section titled "FOR THE EXECUTION OF THE OATH OF OFFICE",
Part 3)

EXHIBIT "E"

02/09/2009 12:16 FAX 7032895002                                                               ☑002

## OATH OF OFFICE – MILITARY PERSONNEL
For use of this form, see AR 135-100, the proponent agency is ODCSPER

### DATA REQUIRED BY THE PRIVACY ACT OF 1974

**AUTHORITY:** 5 USC 3331, 552, 552a; 10 USC 10204.
**PRINCIPAL** To create a record of the date of acceptance of appointment.
**ROUTINE USES:** Information is used to establish and record the date of acceptance. The SSN is used to identify the member. The date of acceptance of appointment is used in preparing statements of service and computing basic pay date.
**DISCLOSURE:** Completion of form is mandatory. Failure to do so will cause the appointment to be invalid.

### INSTRUCTIONS

INDICATE THE APPOINTMENT FOR WHICH OATH IS BEING EXECUTED BY PLACING AN "X" IN APPROPRIATE BOX. REGULAR ARMY COMMISSIONED OFFICERS WILL ALSO SPECIFY THE BRANCH OF APPOINTMENT WHEN APPOINTED IN A SPECIAL BRANCH.

This form will be executed upon acceptance of appointment as an officer in the Army of the United States. Immediately upon receipt of notice of appointment, the appointee will, in case of acceptance of the appointment, return to the agency from which received, the oath of office *(on this form)* properly filled in, subscribed and attested. In case of non-acceptance, the notice of appointment will be returned to the agency from which received, *(by letter)* indicating the fact of non-acceptance.

| COMMISSIONED OFFICERS | WARRANT OFFICERS |
|---|---|
| ☐ REGULAR ARMY *(Branch when so appointed)* | ☐ REGULAR ARMY |
| ☐ ARMY OF THE UNITED STATES, WITHOUT COMPONENT | ☐ ARMY OF THE UNITED STATES, WITHOUT COMPONENT |
| ☒ RESERVE COMMISSIONED OFFICER | ☐ RESERVE WARRANT OFFICER |

I, _____SCOTT A. BENNETT_____          _____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_____
    *(First Name - Middle Name - Last Name)*          *(Social Security Number)*

having been appointed an officer in the Army of the United States, as indicated above in the grade of
_____2LT_____ do solemnly swear *(or affirm)*
that I will support and defend the Constitution of the United States against all enemies, foreign and domestic, that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office upon which I am about to enter; SO HELP ME GOD.

_____*Scott Allen Bennett*_____
*(Signature - full name as shown above)*

SWORN TO AND SUBSCRIBED BEFORE ME AT _Southern Maryland US Army Reserve Center_

THIS _Eighth_          DAY OF _February_          _2009_
     *(Day)*                  *(Month)*       *(Year)*

_Joyce Bush, LTC, PO_          _Joyce Bush_
*(Grade, component, or office of official administering oath)*          *(Signature)*

### FOR THE EXECUTION OF THE OATH OF OFFICE

1. Whenever any person is elected or appointed to an office of honor or trust under the Government of the United States, he/she is required before entering the duties of his/her office, to take and subscribe the oath prescribed by, 5 USC 3331.

2. 10 USC 626 and 14309 eliminate the necessity of executing oath on promotion of officers.

3. The oath of office may be taken before any commissioned officer of any component of any Armed Force, whether or not on active duty *(10 USC 1031)*, or before any commissioned warrant officer when acting as an adjutant, assistant adjutant, acting adjutant, or personnel adjutant in any of the Armed Forces *(See UCM.*

*Article 136; 10 USC 936*). A commissioned warrant officer administering the oath of office will show his/her title in the block to the left of his/her signature.

4. Oath of office may also be taken before any civil officer who is authorized by the laws of the United States or by the local municipal law to administer oaths, and if so administered by a civil official, the oath must bear the official seal of the person administering the oath, or if a seal is not used by the official, the official's capacity to administer oaths must be certified to under seal by a clerk or court or other proper local official.

DA FORM 71, JUL 1999          EDITION OF DEC 1988 IS OBSOLETE          CFP V2.0
EXHIBIT "E"

*(right margin, rotated text:)* Document establishing LTC. Joyce Bush as 2LT Bennett's Commander, and NOT LTC. Joel Droba at time of 2LT Bennett's transfer from 11th PSYOP Battalion to MacDill AFB, Tampa, Florida.

EXHIBIT "D":

## EXHIBIT "F"

Document establishes 2LT Scott Bennett's
Commission as an Active Army Reserve Officer
is appointed for an "indefinite term", also
defined as "ONGOING" according to Websters
Dictionary and Black's Law Dictionary.

This document was used by 2LT Scott Bennett
when filling out his temporary military
housing forms for "Time Remaining on Active
Duty" reflecting Bennett's time duration as
a commissioned Officer.

## APPLICABLE TERMINOLOGY

1. ONGOING: a) being actually in process; b)
continuously moving forward: growing

2. INDEFINITE TERM: Not definite; typically
designating an unidentified or not immediately
identifiable person or thing; not precise:
VAGUE; having no exact limit.

3. ACTIVE: engaged in an action or activity
(an active club member) [an active reservist]

4. DUTY: obligatory tasks, conduct, service,
or functions that arise from one's position
(as in life or in a group); assigned service
or business, especially active military service;
a moral or legal obligation.

5. OATH OF OFFICE FORM:  The date of acceptance
of appointment is used in preparing statements
of service and computing basic pay date.
(Bennett relied on this form, as stated above,
to establish his ongoing duty timeline of
service).

6. DD FORM 214:  Form used to compute all materials
and progress and training associated with
2LT Bennett's military career.  Form states
specifically, "RESERVE OBLIGATION TERMINATION
DATE (YYYYMMDD): 00000000".  Therefore Bennett's
'ONGOING' answer to question on housing form
was consistent with both DD FORM 214 and
others, since "termination date" of 00000000
translated into a "never ending" termination.

7. ORDER: A command, direction, or instruction.
    (2LT Bennett followed commands of his superiors)

EXHIBIT "F"

CORRECTED COPY

DEPARTMENT OF THE ARMY
U.S. ARMY HUMAN RESOURCES COMMAND
1 RESERVE WAY
ST. LOUIS, MO 63132-5200



AHRC-OPD-RA                                                         18 FEB 2009

MEMORANDUM FOR

2LT SCOTT A BENNETT, 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
DELAWARE AVE, SW S-634                          A – AG-USAR
WASHINGTON, DC 20024                            B – 00D
                                                C – AR 135-100
                                                D –

SUBJECT: Appointment as a Reserve Commissioned Officer of the Army Under Title 10,
USC 12201 and 12203

1.   The Secretary of the Army has directed that you be informed that by direction of the President, you are appointed
a Reserve commissioned officer of the Army, effective on your acceptance, in the grade and with the social security
number shown in the address above.  Your branch and component are shown after A above.

2.   The appointment is for an indefinite term.

3.   Execute the enclosed form for oath of office and return promptly to this headquarters, ATTN: AHRC-OPD-RA.
Your execution and return of the oath of office constitutes your acceptance of appointment.  Prompt action is
requested since cancellation of this appointment is required if acceptance is not received within 90 days or as
otherwise prescribed.  On receipt of the properly executed oath of office, a commission (DD Form 1A) will be
forwarded to you.  If you do not desire to accept appointment, return this letter with your statement of declination
thereon.

4.   Your primary Specialty Skill Identifier (SSI) is shown after B (when applicable).  The Army regulation pertaining to
your appointment is shown after C.  If you have been credited with "years of service in an active status" the number
of years, months, and days is shown after D (applies only to Chaplains, Medical personnel and the Judge Advocate
General's Corps).  This service is not valid for pay entry basic date (see DODPM para 10102, for Medical and Dental
Corps personnel) and it is not the result of prior military service.

5.   After acceptance of this appointment, any change in your permanent home address or a temporary change of
address of more than 30 days duration will be reported by you to the custodian of your military personnel records.

FOR THE COMMANDER:

Encl                                            *Mark A. Galantowicz*
                                                MARK A. GALANTOWICZ
                                                Chief, Appointments

                                                DATE OF ACCEPTANCE:  8 Feb 09

OMPF
FIELD FILE                                      EFFECTIVE DATE:  8 Feb 09
AHRC-OPD-RA
AHRC-RSE-L

EXHIBIT "F"

Document establishes 1) Bennett's transfer was in fact initiated by his home unit through changing his official address in Army computers; 2) Indefinite="ongoing" term.

EXHIBIT "F"

EXHIBIT "F"

CERTIFICATE OF ACKNOWLEDGEMENT AND UNDERSTANDING OF SERVICE REQUIREMENTS
FOR INDIVIDUALS APPLYING FOR APPOINTMENT IN THE USAR
UNDER THE PROVISIONS OF AR 135-100, OR 135-101, AS APPLICABLE
- INDIVIDUALS WITHOUT PRIOR SERVICE -

For use of this form, see AR 135-100; the proponent agency is ODCSPER

**DATA REQUIRED BY THE PRIVACY ACT OF 1974**

AUTHORITY:          10 USC 651, 10 USC 270.

PRINCIPAL PURPOSE:  Used together with application for appointment to insure individual understanding of the 8-year statutory obligation.

ROUTINE USES:       Information is used to establish and record the obligation incurred by the officer. The SSN is used to identify the member.

DISCLOSURE:         Disclosure of your Social Security Number is voluntary. However, failure to disclose your SSN may be cause for denying
                    your application for appointment.

*INSTRUCTIONS: This Certificate of Acknowledgement and Understanding of Service Requirements will be executed and
submitted in 3 copies with the application for appointment as a commissioned or warrant officer in the USAR by all
interested applicants without prior service.*

In connection with your application for appointment as a commissioned or warrant officer in the Army Reserve under the

provisions of ___AR 135-100___ *, there are certain service obligations that you will incur if a commission is offered and you

*(Applicable AR)*

accept. The are explained in detail below. This information should be carefully studied prior to acknowledgement.

This form with your signature will be submitted with your request for appointment and indicates that you understand and

accept all of the service requirements contained herein.

Copies of this form with your signature will become part of your Official File if you are selected for appointment.

**CERTIFICATION**

If I accept an appointment as a commissioned or warrant officer in the US Army Reserve, I understand and agree to comply

with the following service requirements:

1.      I will incur a statutory military service obligation of 8 years commencing with the effective date of appointment.

2.      Appointment under this program requires that I agree to participate satisfactorily in the Army Reserve during the

entire period that I am a commissioned or warrant officer in accordance with the rules and regulations now in effect, or

which may hereafter be placed into effect by proper authority.

3.      I will enter on active duty for the period stipulated in my application or such lesser period as determined by the

Department of the Army and upon completion of active duty I will be required to participate in the Army Reserve as

follows:

    a.      If I am mandatorily assigned or voluntarily join a Reserve unit I will be required to attend all scheduled unit

training assemblies *(at least 48 per year)* unless excused by proper authority.

    b.      As a member of a unit, I may be required to satisfactorily complete a period of annual active duty for training

of not less than 14 days per year exclusive of travel time.

    c.      If I am not assigned to a unit, I will be assigned to the Individual Ready Reserve (IRR), and while so assigned

I may be required to perform not more than 30 days active duty for training annually.

    d.      While a member of the IRR, I may be subject to assignment or reassignment to a unit.

    e.      For as long as I hold this appointment I am responsible for notifying my unit or IRR commander of the mailing

address at which I will receive official orders and/or correspondence. It is also my responsibility to apply to and/or comply

*Enter applicable regulation that appointment is being tendered under AR 135-100, or AR 135-101.*

DA FORM 3574, JUN 1984          EDITION OF MAY 82 IS OBSOLETE.          APD PE v1.00

EXHIBIT "F"

EXHIBIT "F"

Document establishes Bennett's 8-year statutory obligation in Active Reserve, therefore "ongoing" was accurate description; Line "E" indicates transfer.

EXHIBIT "F"

with all official orders and correspondence which I may receive. I understand that failure to notify my commander of an address where I can be reached or to comply with all official orders and correspondence could result in my being considered for elimination.

4.   That as a Reserve Officer of the Army, I can become an officer of the Army National Guard of the United States if I am appointed and Federally recognized in the Army National Guard of a State, Puerto Rico, or the District of Columbia. I understand further that satisfactory service as a commissioned officer of the Army National Guard of the United States constitutes service in the Ready Reserve; accordingly, if Ready Reserve service in an appropriate activity of the United States Army Reserve is not available to me, I agree to accept appointment in the Army National Guard of a state *(including the District of Columbia and Puerto Rico)* in which I am residing, if tendered and to complete my Ready Reserve service as an officer of the Army National Guard of the United States.

During the time that I am a commissioned or warrant officer and a member of the Ready Reserve I may at any time be ordered to active duty involuntarily as an individual or as a member of a unit in the event of war or emergency declared by Congress, or the President of the United States, or under any other condition authorized by law in effect at the time of my appointment, *or which may hereafter be enacted into law.*

I, the undersigned, having voluntarily elected to apply for appointment as a commissioned or warrant officer of the United States Army Reserve, acknowledge that all of the conditions of said appointment are understood and acceptable.

| TYPED NAME OF APPLICANT *(Last - First - Middle Initial)* | SOCIAL SECURITY NUMBER |
|---|---|
| BENNETT, SCOTT, A | 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 |
| SIGNATURE | DATE |
|  | 28 JAN 2008 |

APD PE v1.00

EXHIBIT "F"

EXHIBIT "F"

**EXHIBIT "F"--PART 6 (DD214 Form)**

CAUTION: NOT TO BE USED FOR IDENTIFICATION PURPOSES

THIS IS AN IMPORTANT RECORD. SAFEGUARD IT.

ANY ALTERATIONS IN SHADED AREAS RENDER FORM VOID

## CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

| 1. NAME (Last, First, Middle) BENNETT, SCOTT ALLAN | 2. DEPARTMENT, COMPONENT AND BRANCH ARMY/USAR/AG | 3. SOCIAL SECURITY NUMBER 550 81 7283 |
|---|---|---|

| 4a. GRADE, RATE OR RANK 2LT | b. PAY GRADE 001 | 5. DATE OF BIRTH (YYYYMMDD) 19710108 | 6. RESERVE OBLIGATION TERMINATION DATE (YYYYMMDD) 00000000 |
|---|---|---|---|

| 7a. PLACE OF ENTRY INTO ACTIVE DUTY FORT BENNING, GEORGIA | b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known) 1311 DELAWARE AVE SW APT S634 WASHINGTON DISTRICT OF COLUMBIA 20024-3923 |
|---|---|

| 8a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND CO A TNG SPT BN ST TC | b. STATION WHERE SEPARATED FORT JACKSON, SC 29207 |
|---|---|

| 9. COMMAND TO WHICH TRANSFERRED 1 11 PO BN HHC, 5550 DOWER HOUSE ROAD, UPPER MARLBORO, MD 20772-3603 | 10. SGLI COVERAGE [ ] NONE AMOUNT: $400,000.00 |
|---|---|

11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.)
42B HR OFFICER - 00 YRS 00 MOS//NOTHING FOLLOWS

| 12. RECORD OF SERVICE | YEAR(S) | MONTH(S) | DAY(S) |
|---|---|---|---|
| a. DATE ENTERED AD THIS PERIOD | 2009 | 05 | 10 |
| b. SEPARATION DATE THIS PERIOD | 2009 | 10 | 02 |
| c. NET ACTIVE SERVICE THIS PERIOD | 0000 | 04 | 23 |
| d. TOTAL PRIOR ACTIVE SERVICE | 0000 | 00 | 00 |
| e. TOTAL PRIOR INACTIVE SERVICE | 0000 | 03 | 02 |
| f. FOREIGN SERVICE | 0000 | 00 | 00 |
| g. SEA SERVICE | 0000 | 00 | 00 |
| h. EFFECTIVE DATE OF PAY GRADE | 2009 | 02 | 08 |

13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service)
NATIONAL DEFENSE SERVICE MEDAL//ARMY SERVICE RIBBON//NOTHING FOLLOWS

14. MILITARY EDUCATION (Course title, number of weeks, and month and year completed)
ADJUTANT GENERAL BASIC OFFICER LEADERSHIP COURSE, 2009//NOTHING FOLLOWS

| 15a. MEMBER CONTRIBUTED TO POST-VIETNAM ERA VETERANS' EDUCATIONAL ASSISTANCE PROGRAM | | YES | X NO |
|---|---|---|---|
| b. HIGH SCHOOL GRADUATE OR EQUIVALENT | X | YES | NO |

| 16. DAYS ACCRUED LEAVE PAID 0 | 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | YES | X NO |
|---|---|---|---|

18. REMARKS ////////////////////////////////////////////////
ITEM 12D ABOVE DOES NOT ACCOUNT FOR ANNUAL AND/OR WEEKEND TRAINING THIS SOLDIER MAY HAVE ACCOMPLISHED PRIOR TO DATE ENTERED IN ITEM 12A//INDIVIDUAL COMPLETED PERIOD FOR WHICH ORDERED TO ACTIVE DUTY FOR PURPOSE OF POST SERVICE BENEFITS AND ENTITLEMENTS//MEMBER HAS COMPLETED FIRST FULL TERM OF SERVICE//NOTHING FOLLOWS

The information contained herein is subject to computer matching within the Department of Defense or with any other affected Federal or non-Federal agency for verification purposes and to determine eligibility for, and/or continued compliance with, the requirements of a Federal benefit program.

| 19a. MAILING ADDRESS AFTER SEPARATION (Include ZIP Code) 1311 DELAWARE AVE SW APT S634 WASHINGTON DISTRICT OF COLUMBIA 20024-3923 | b. NEAREST RELATIVE (Name and address – Include ZIP Code) ELLA BENNETT 9 MACOMBER WAY DANVILLE CALIFORNIA 94526 |
|---|---|

| 20. MEMBER REQUESTS COPY 6 BE SENT TO _____ DC | DIRECTOR OF VETERANS AFFAIRS | X YES | NO |
|---|---|---|---|

| 21. SIGNATURE OF MEMBER BEING SEPARATED DIGITALLY SIGNED BY: BENNETT.SCOTT.ALLAN.1381151111 | 22. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title and signature) DIGITALLY SIGNED BY: JOHNSON.THERESIA.R.1052995040 THERESIA R JOHNSON, YA2, TRANSITION CENTER |
|---|---|

### SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only)

| 23. TYPE OF SEPARATION RELEASE FROM ACTIVE DUTY TRAINING | 24. CHARACTER OF SERVICE (Include upgrades) HONORABLE | |
|---|---|---|

| 25. SEPARATION AUTHORITY AR 600-8-24, PARA 2-7 | 26. SEPARATION CODE MBK | 27. REENTRY CODE NA |
|---|---|---|

| 28. NARRATIVE REASON FOR SEPARATION COMPLETION OF REQUIRED ACTIVE SERVICE |
|---|

| 29. DATES OF TIME LOST DURING THIS PERIOD (YYYYMMDD) NONE | 30. MEMBER REQUESTS COPY 4 (Initials) SAB |
|---|---|

DD FORM 214-AUTOMATED, FEB 2000    PREVIOUS EDITION IS OBSOLETE.    SERVICE-2

EXHIBIT "F"--PART 6 (DD-214 Form): "ongoing" or never ending termination date of Commission.

<u>EXHIBIT "G"</u>

<u>PART 1:</u>   Base Map of MacDill AFB showing "Proprietary"
jurisdiction area where Bennett was stopped,
arrested, detained, and searched by Military
Police.  Bennett was in "Civilian" status at the
time, which automatically prohibited Base
Security from enforcing Florida State laws and
arresting Bennett and removing him from his vehicle.
Military police were obligated to allow operator
"to depart the installation", by order of the
Base Commander, as well as 18 USC §1385 (Posse Comitatus).

<u>PART 2:</u>   Military police "logbook" recording entrants/visitors
approaching MacDill AFB main gate.  Bennett is
1) recorded as a "Civilian"; 2) Military instructions
state that security forces personnel are not
authorized to arrest, detain, or search civilian for
suspicion of D.U.I. (or other State Law) but <u>must</u>
"only deny entrance" to base.  Thus MacDill AFB
Security Forces personnel violated base policy and
Posse Comitatus 18 USC§1385 by unlawfully stopping,
arresting, removing from his car, and detaining
Bennett for 45 minutes while they awaited the arrival
of Tampa Police Department.  Security Forces
personnel also "disobeyed a direct order" from the
base Commander by doing this against Bennett, as
outlined in section describing actions to be taken
against A--MILITARY PERSONNEL and B--CIVILIANS.
Bennett was a civilian at the time, and registered
as such, thus he was entitled to the same rights
and protections as any civilian approaching a
military base, and seeking to "turn around and
leave" that military base (as Bennett requested but
was denied by Security personnel).

**EXHIBIT "G"--PART 1**



*:Bennett stopped, arrested, detained at this location (proprietary jurisdiction) off-base.

EXHIBIT "G"--jurisdictional map of MacDill AFB
(PART 1)

EXHIBIT "G"--PART 1--CLOSE_UP



Bennett stopped, arrested, detained by military security forces at spot marked '✶'. Location was proprietary and off-base, giving no powers of arrest of civilians to security forces (violated 'Posse Comitatus').

EXHIBIT "G"--Close-up of jurisdictional map at MacDill
(PART 1)
CLOSE_UP        AFB Main Gate (Bennett was stopped outside
of Main Gate, therefore beyond military
police jurisdiction). ✶ Marks the spot.
Bennett located "off-base".

# EXHIBIT "G"--PART 2 (LOG BOOK)

Good Morning/Afternoon/Evening Sir/Ma'am, I'm _____ from the 6th Security Forces Squadron and I am conducting Base Entry Point Check Inspections that have been authorized by the installation commander. This is not a search, but an examination of your automobile and contents therein. The purpose of this examination is to discover contraband and/or prevent the removal of government property. Failure to submit may result in the loss of your installation driving privileges, revocation of installation registration, debarment from base, or other action deemed necessary by the installation commander. At this time, I would like for you turn off your ignition, open all compartments (glove box, trunk, etc...) and have all passengers exit the vehicle. Thank You.

** Civilians:  Entering the installation: Identify all occupants, instruct operator to depart the installation and complete a blotter entry and incident report.  Passengers may enter the base if properly sponsored.

Exiting the installation: Identify all occupants and advise operator they can not refuse the inspection.  Detain driver and contact SFCC and follow instructions provided.

Military:  Entering: Apprehend operator for "Disobeying a lawful order." and contact SFCC to coordinate with SJA to get authority to search from MSG/CC.
Exiting: Apprehend operator for "Disobeying a lawful order" and contact SFCC to coordinate with SJA to get authority to search from MSG/CC.

*** 

Date: 23 Apr 16   Gate Selection (circle one): DMG/BBG/MDG/PTG   Time start: 0130   Time End: 0236   Frequency: 1/1   In / Out

| Num # | Rank/Name (Last, First, MI), Rank | Unit/Office/DP# /Address/HP# | Vehicle Make/Model | License Plate # /State of Issue | Time Checked | Results |
|---|---|---|---|---|---|---|
| 1 | Bract Nora J | 6 SFS   8-3521 | Ford Mustang | 028 WXH  FL | 0145: | NEG |
| 2 | Burns John Paul | 6 SAtCOM   8-3660 | Mitsubishi Eclipse | NK 2682 Indiana | 0151 | NEG |
| 3 | Wood Myles Aaron | 6 CES CEF   828-3630 | Dodge Durango | 093 TEL  FL | 0158 | NEG |
| 4 | 03 Hostetler Eric E | Centcom CCJ2  827-8112 | Honda Insight | W29DCB  FL | 0204 | NEG |
| 5 | Bennett Scott Allan   civ | J3 IAG Centcom   7914 Paul Smith Dr. HC 33621  827-8622 | BMW M3 | S-875542 Dealer plates | 0220 | Code 15 |

| Print Rank and Name of Patrol | Signature: | Flight Sergeant (Initials) | Name of MWD if used: |
|---|---|---|---|
| TSgt. Garry Ortiz   A1C Rodriguez Tina | | GP | |

6 SFS Form #1, May 2006          PREVIOUS EDITIONS ARE OBSOLETE

**--Military regulation instructing Security Forces on Civilian and Military personnel inspections at entrance. NOTE: Bennett is "civ"(civilian)

EXHIBIT"G" (PART 2) LOG BOOK

**EXHIBIT "G" --PART 2 (LOG BOOK):** Bennett is listed as a CIVILIAN. Security forces were obligated to allow Bennett to "depart the installation". Instead they arrested him--unlawfully.

EXHIBIT "H"

*EXHIBIT # 16*

AUTHORITY TO SEARCH AND SEIZE

| | |
|---|---|
| I have *(previously)* been informed that | Detective EDWARD R. GARCIA JR., 6 SFS |
| is investigating the offense of | Possession of Unregistered Firearms on a Federal Military Installation |

and has requested that

I authorize a search of the *(person of* )

*(premises known as* 7914 Paul Smith Drive, Apartment C and Storage Shed 13-A, Bldg #753, MacDill AFB, FL )

and the seizure of the following specified property:

Any unregistered firearms; ammunition and other dangerous weapons; or other evidence pertaining to the possession of

unregistered firearms or dangerous weapons.

Having carefully considered the matters presented to me in support of that request, I *(am) (was)* satisfied that there *(is) (was)* probable cause to believe that the property specified above *(is) (was)* being concealed on the *(person) (premises)* described. I *(am) (was)* further satisfied from the matters presented that the said property (1) is evidence which will aid in the apprehension or conviction of the person(s) who committed the offense being investigated, or (2) is or has been used, designed, or intended for use, as the means of committing the criminal offense(s) being investigated, or (3) was illegally obtained as the result of the commission of the offense(s) being investigated, or (4) is contraband possessed or controlled in violation of law or regulation, or (5) is a combination of two or more of (1) through (4).

Accordingly, Detective EDWARD R. GARCIA JR.

the assistance of such person or persons as may be necessary, *(is) (was)* directed to search forthwith the *(person) (premises)* described for the property specified, and if such property be found to seize and secure the same for use as evidence in any criminal prosecution hereafter initiated. This authority to search and seize *(is) (was)* issued by virtue of:

☐ My position as commander having jurisdiction over the *(person) (premises)* herein described.

☒ My delegation to me of the authority to authorize searches and seizures by the commander having jurisdiction over the *(person) (premises)* herein described.

No search conducted pursuant to the authority herein granted shall be initiated later than three days from 1708 hrs,

23 April 2010 *(date authority is granted)*.

Dated this 26th day of April , 2010 *(year)*, at *1500* hrs, MacDill AFB, FL

CAUTION

RECORD SHOULD BE KEPT OF THE INFORMATION GIVEN TO THE AUTHORIZING OFFICER, ON WHICH THAT OFFICER BASES THE AUTHORIZATION, FOR POSSIBLE USE IN COURTS-MARTIAL. MAKE A SUMMARY OF ORAL INFORMATION. ENSURE THAT THIS SUMMARY AND ANY WRITTEN INFORMATION RECEIVED IS PROPERLY PRESERVED. CONSULT THE STAFF JUDGE ADVOCATE. ALSO SEE AFI 31-201.

| TYPED NAME, GRADE, AND ORGANIZATION AUTHORIZING OFFICIAL | SIGNATURE | DATE *(YYYY DD MM)* |
|---|---|---|
| DONALD J. BARNES, Colonel, USAF Military Magistrate, MacDill AFB, FL | | 20100426 |

AF IMT 1176, 19880601, V2          PREVIOUS EDITION IS OBSOLETE.

EXHIBIT "H" --Defective and unenforceable warrant. Dated *after* search.

*(right margin handwritten annotation)* EXHIBIT "H": signed and dated three (3) days after search, indicating it was produced *after* the search of Bennett's car and residence. Inadmissable.

Freedom FOREVER

Equality FOREVER

Equality FOREVER

Liberty FOREVER

Justice FOREVER

Freedom FOREVER

Legal Mail

Legal Mail

Legal Mail

ATT: Clerk of The Court

≈29418-016≈
District Court Of Florida
801 N Florida AVE
Judge Hernandez Covington
Tampa, FL 33602
United States

SCREENED
BY USMS

Scott Damian, 2LT USAR
29418-016
FPC Schuylkill, Camp 2
P.O. Box 670
Minersville, PA 17954-0570